Hillsborough-northern judicial district
Nos. 2002-300
 2003-376

JOHN J. KELLEHER, JR.

v.

MARVIN LUMBER AND CEDAR COMPANY

Argued: September 14, 2005
Opinion Issued: December 15, 2005

814

*Sulloway & Hollis, P.L.L.C.*, of Concord (*John R. Harrington* on the brief and orally), for the plaintiff.

*Orr & Reno, P.A.*, of Concord (*Emily Gray Rice* on the brief and orally), for the defendant.

GALWAY, J. In these consolidated appeals, the defendant, Marvin Lumber and Cedar Company (Marvin), appeals: (1) the partial jury verdict from the Superior Court (*Brennan*, J.) in the first trial that awarded the plaintiff, John J. Kelleher, Jr., $53,676.00 in damages on his strict liability claim; (2) the jury verdict in the retrial that awarded the plaintiff $57,247.04 on his breach of express warranty and breach of the Magnuson-Moss Warranty-Federal Trade Commission Improvement Act (Magnuson-Moss Act) claims; and (3) the award of attorney's fees, at the conclusion of the retrial, in the amount of $119,898.57. The plaintiff cross-appeals the trial court's dismissal of his breach of implied warranty claim under the Act. We affirm in part, vacate in part, and remand.

The record supports the following facts and procedural history. In 1986, the plaintiff purchased and installed windows manufactured by the defendant in his newly constructed residence in Ogunquit, Maine. The plaintiff purchased the windows from John Collins, a salesman employed by Steenbeke & Son, a New Hampshire retail building materials supplier. The windows were treated with a wood preservative (PILT), which was manufactured by PPG Industries and designed to inhibit "premature, moisture-induced wood rot." Before trial, the defendant conceded that PILT is an ineffective preservative.

In 1986, the plaintiff noticed a leak in one of his living room windows. As a result of that leak, and upon the recommendation of a Marvin windows distributor, all of the newly installed windows were re-caulked. In 1993 or 1994, the plaintiff noticed that a small piece of molding on the sash of a rear window contained rot, and he had it repaired. Sometime in 1997, the plaintiff noticed that the sash of the same rear window also contained rot and the sash was replaced. Then, in 1998, the plaintiff employed a painter who found significant amounts of rot in five Marvin windows. Shortly thereafter, in August 1998, the plaintiff filed a complaint form with the defendant, thereby formally notifying it of the rot damage in his windows.

In response to a question on the complaint form, the plaintiff indicated that the rot problem began in "1993/'94?"

After receiving the plaintiff's complaint, a Marvin representative inspected all of the windows in the plaintiff's home and determined that seventeen windows contained rot damage. The inspector showed the plaintiff that a subtle dimpling of the surface coating of the windows was a sign that the underlying wood was rotten. On November 12, 1999, after negotiations to replace the damaged windows were unsuccessful, the plaintiff initiated the underlying lawsuit seeking damages for the replacement costs of the defective windows, loss of value of the house in which the windows were installed and costs related to repairing water damage allegedly caused by the defective windows.

During the course of this litigation, the defendant produced a one-year limited warranty (the one-year warranty), which was in effect in 1986 and allegedly accompanied the windows that were delivered to the plaintiff. This one-year warranty guaranteed the wood portion of the windows. The plaintiff alleged that an oral fifteen-year warranty was given by a Steenbeke salesman during a telephone conversation in 1998, in which the salesman represented that the windows were "guaranteed for a period of fifteen years" (the fifteen-year warranty). In addition, the defendant's catalog, which was generally available from Steenbeke when the plaintiff purchased the windows, stated that: (1) "all exterior wood is deep treated in a dry vac process with a pesticide and water repellant solution to permanently protect against rot and decay"; and (2) the pre-finish "lasts four to five times longer than paint" (the catalog warranty).

The plaintiff's writ asserted claims based upon the fifteen-year warranty but failed to identify the alleged warranty contained in the defendant's catalog. On June 23, 2000, based upon the fifteen-year warranty, the defendant moved to dismiss all of the plaintiff's claims, asserting they were barred by the applicable statutes of limitations and the economic loss doctrine. Specifically, with respect to the Magnuson-Moss and breach of express warranty claims, Marvin argued that the fifteen-year warranty was insufficient to trigger the future performance exception to the applicable statute of limitations, and, therefore, these claims were untimely. See RSA 382-A:2-725(1) (1994). Based upon the fifteen-year warranty, the Superior Court (Groff, J.) denied the defendant's motion to dismiss the breach of express warranty claim, but dismissed the Magnuson-Moss claim because the fifteen-year warranty did not comply with the Magnuson-Moss Act's requirement that it be in writing. The strict liability claim also survived the motion to dismiss.

By order dated September 19, 2000, the trial court granted the plaintiff's motion to amend the writ, which ultimately resulted in both the

Magnuson-Moss and breach of express warranty claims being based upon the written catalog warranty rather than the fifteen-year warranty. The defendant then moved for summary judgment, reasserting that the plaintiff's claims were untimely and, therefore, barred as a matter of law. With respect to the strict liability claim, the defendant asserted that the plaintiff knew that one of the windows contained rot as early as 1996, and, therefore, even if the discovery rule exception to RSA 508:4, I (1997) applied, the plaintiff still failed to timely file this claim. Similarly, it argued that pursuant to RSA 382-A:2-725, the statute of limitations applicable to the Magnuson-Moss and breach of express warranty claims, the plaintiff was required to file his claim within four years of delivery of the windows. The defendant also argued that the catalog warranty was not sufficiently explicit to invoke the future performance exception and, therefore, failed to trigger the discovery rule exception encompassed by RSA 382-A:2-725. On April 5, 2001, the trial court denied the defendant's summary judgment motion.

In October 2001, the court conducted a six-day jury trial. By way of a special verdict form, the jury returned a partial verdict for the plaintiff on the strict liability count, awarding damages in the amount of $53,676.00. However, the court declared a mistrial as to the Magnuson-Moss and breach of express warranty claims when the jury was unable to reach a verdict on them. The defendant's subsequent post-trial motion to set aside the verdict, motion for a new trial, motion to reduce damages, and motions for a directed verdict and judgment notwithstanding the verdict (JNOV) were denied.

The defendant appealed the jury verdict, arguing the trial court erred in: (1) determining the plaintiff's claims were timely and did not violate the applicable statute of limitations; (2) declining to determine that the catalog warranty was insufficient, as a matter of law, to trigger the future performance exception of RSA 382-A:2-725; (3) allowing the plaintiff to simultaneously maintain both the strict liability claim and the Magnuson-Moss claim; (4) denying its motion to set aside the verdict on the strict liability claim; (5) denying its motion in limine and admitting statements made by Marvin's agents in connection with another case as statements of a party opponent; (6) failing to properly instruct the jury regarding damages on the strict liability claim; (7) failing to determine that the damages sought by the plaintiff in strict liability were barred by the economic loss doctrine; (8) denying the defendant's motion to reduce damages on the strict liability claim; and (9) denying its motion to dismiss the Magnuson-Moss claim on the basis that the catalog warranty failed to qualify as a written warranty for the purposes of the Magnuson-Moss Act.

While this appeal was pending and over the defendant's objection, the trial court scheduled a retrial of the breach of express warranty and Magnuson-Moss claims. We suspended the pending appeal to allow the trial court to resolve the defendant's remaining claims. Accordingly, in February 2003, the trial court conducted a three-day trial on the remaining claims.

Prior to the February 2003 trial, and contrary to its ruling in the prior trial, the trial court granted the plaintiff's motion to exclude evidence of the one-year warranty at trial. Additionally, prior to charging the jury, the trial court partially granted the plaintiff's motion for a directed verdict, ruling that the representations made in the catalog constituted a written warranty as a matter of law. The trial court then instructed the jury regarding the catalog warranty, the burden of proof, the elements of the claims, damages, and the statute of limitations. The jury returned a plaintiff's verdict in the amount of $57,247.04. The court then granted the plaintiff's motion for attorney's fees, pursuant to the Magnuson-Moss Act, in the amount of $119,898.57. Both parties timely appealed.

On appeal, in addition to incorporating previously asserted arguments, the defendant argues that the trial court: (1) erred in refusing to delay the retrial of the plaintiff's breach of warranty claims; (2) improperly excluded evidence of the one-year warranty; (3) improperly determined, as a matter of law, that the defendant's catalog was a warranty; (4) improperly instructed the jury regarding the appropriate burden of proof, the elements of and damages available under the breach of warranty and Magnuson-Moss Act claims, and the applicable statute of limitations; (5) erred in refusing to reduce the amount of damages; and (6) erred in granting attorney's fees.

The plaintiff cross-appealed, asserting the trial court erred in dismissing his claim for breach of implied warranty under the Magnuson-Moss Act. We consolidated the defendant's two appeals and the plaintiff's cross-appeal. We first address the defendant's appeals and then turn to the plaintiff's cross-appeal.

*I. Statute of Limitations*

The defendant argues that the plaintiff's claims were barred by the applicable statute of limitations as a matter of law. As a preliminary matter, we note that the defendant raised and reasserted this issue throughout the pre-trial and trial process. In the interest of judicial economy, we will review the trial court's pre-trial rulings *de novo*, the most favorable standard to the appealing party. However, any subsequent rulings made during and after the trial will be reviewed individually under the appropriate standard.

*A. Strict Liability*

The defendant asserts that the plaintiff's strict liability claim was untimely filed and barred by RSA 508:4, I (1997). It contends that the plaintiff acknowledged that he knew there was rot damage in one window in 1993 or 1994. Because the plaintiff failed to initiate this cause of action within three years thereafter, the defendant contends the trial court erred in denying its motion for summary judgment.

The plaintiff counters that the statute of limitations accrued in approximately 1998, when he first learned of the pervasiveness of the rot damage in more than one window and could reasonably have known of its connection to the ineffective preservative. The plaintiff argues that the issue of whether, with reasonable diligence, he should have known of the rot problem when he first discovered rot damage in 1993 or 1994 is an issue of fact, which the trial court properly reserved for the jury.

■ Under the doctrine of strict liability, "[o]ne who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer." *Price v. BIC Corp.*, 142 N.H. 386, 388 (1997); RESTATEMENT (SECOND) OF TORTS § 402A(1) (1965). RSA 508:4, I, codifies the common law discovery rule applicable to all personal actions "except as otherwise provided by law," thereby encompassing this strict liability claim. *See Dobe v. Comm'r, N.H. Dep't of Health & Human Services*, 147 N.H. 458, 461 (2002). RSA 508:4 provides in pertinent part:

> Except as otherwise provided by law, all personal actions . . . may be brought only within 3 years of the act or omission complained of, except that when the injury and its causal relationship to the act or omission were not discovered and could not reasonably have been discovered at the time of the act or omission, the action shall be commenced within 3 years of the time the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, the injury and its causal relationship to the act or omission complained of.

RSA 508:4, I. Once the defendant establishes that the cause of action was not brought within three years of the alleged act, the burden shifts to the plaintiff to raise and prove the applicability of the discovery rule. *Glines v. Bruk*, 140 N.H. 180, 181 (1995).

■ Under the discovery rule exception, the statute of limitations does not accrue until: (1) the plaintiff knows or reasonably should have known of the injury; and (2) the plaintiff knows or reasonably should have known of

the causal connection between the injury and the alleged conduct of the defendant. *Big League Entm't v. Brox Indus.*, 149 N.H. 480, 485 (2003). Whether the plaintiff exercised reasonable diligence in discovering the causal connection between the injury and the defendant's alleged act or omission is a question of fact. *Black Bear Lodge v. Trillium Corp.*, 136 N.H. 635, 638 (1993).

Here, the parties do not dispute that the plaintiff first learned of the injury—in this case property damage—in 1993 or 1994 when he noticed rot damage in one window. However, whether the plaintiff, with reasonable diligence, should have known of the causal connection between the rot damage and the defendant's use of the defective preservative, based on this single incidence of rot damage, is a disputed factual issue. The defendant properly raised the statute of limitations issue in its dispositive pre-trial motions, thereby shifting the burden to the plaintiff to prove the applicability of the discovery rule exception. The plaintiff argued that the discovery rule exception tolled the statute of limitations until approximately 1997 or 1998, when he first reasonably should have known of both the pervasiveness of the rot damage and its connection to the defective preservative.

Thus, we must determine whether the court erred, as a matter of law, in allowing the jury to decide whether the plaintiff should have known of the connection between the rot damage and the defective preservative: (1) in approximately 1993 after one window showed rot damage; or (2) in approximately 1997 when he first learned of the pervasiveness of the rot damage in many windows.

"The application of the discovery rule may require factual determinations, but when an issue arises that is equitable in nature, the trial judge acts as the trier of fact." *Keshishian v. CMC Radiologists*, 142 N.H. 168, 179 (1997). The discovery rule has traditionally been deemed equitable. *Id.* As such, the plaintiff is not entitled to have a jury decide the issue merely because the application of the discovery rule involves a question of fact. *Id.* The trial court has the discretionary power to decide a statute of limitations question at a preliminary hearing in advance of trial. *Id.* at 180. It may also delay ruling on the discovery rule issue until after the trial when the facts regarding the plaintiff's discovery are fully developed. *Id.* The trial court also has the discretionary power to decide that this issue is most appropriately decided by the jury, based upon evidence and testimony presented at trial. However, we caution that it is often most economical and equitable to rule on this issue at an earlier point in time, "thereby eliminating the need for a lengthy trial." *Id.*

■ In this case, the parties agree to certain basic facts, such as: (1) when the plaintiff installed the windows; (2) when he noticed prior instances of rot damage in individual windows; (3) when he was notified of the pervasive rot damage in 1997; and (4) when he reported the defective windows to the defendant in 1998. However, a determination regarding whether the plaintiff knew, or should have reasonably known, of the connection between the isolated "insignificant" incidences of window rot prior to November 12, 1996, and the defendant's use of "ineffective preservative" is a factual determination that necessarily turns upon an evaluation of the evidence. Accordingly, we find that the trial court did not err in submitting this issue to the jury.

We next review the jury's finding that the discovery rule tolled the statute of limitations until November 12, 1996. "We will set aside a jury verdict if it is conclusively against the weight of the evidence or if it is the result of mistake, partiality, or corruption." *Babb v. Clark*, 150 N.H. 98, 100 (2003) (quotation omitted). "We will uphold the trial court's decision on a motion to set aside the verdict unless the decision was made without evidence or the court committed an unsustainable exercise of discretion." *Id.*; *see State v. Lambert*, 147 N.H. 295, 296 (2001) (explaining unsustainable exercise of discretion standard).

■ The jury specifically found that the plaintiff neither knew, nor should have known "in the exercise of reasonable diligence," prior to November 12, 1996, "that the windows were defective and that he sustained property damage as a result." During the first trial, the plaintiff testified as to his purchase of the windows, the small rot damage on the molding of one window in 1993 or 1994, subsequent incidents of rot damage in 1997, and the pervasive rot damage found by a painter in 1998. Norman Porell, the master carpenter who replaced 10-12 window units, testified regarding the pervasiveness of the rot surrounding the windows, and damage to other property as a result of the rot damaged windows. Darby Zentner, the defendant's customer service representative, also testified that the inspector found more damaged windows than the plaintiff initially reported. We find this testimony, in conjunction with other evidence presented at trial, sufficient to support the jury's determination that prior to November 1996, the plaintiff did not know, nor reasonably should have known, "that the windows were defective and that he sustained property damage as a result."

Therefore, we uphold the jury's determination, and the trial court's denial of the defendant's motions for directed verdict and JNOV, and conclude that the plaintiff's strict liability claim was timely filed.

## B. State Breach of Express Warranty Claim

Next, the defendant argues that, as a matter of law, the warranty in its sales catalog is not explicit enough to qualify under the future performance exception enumerated in RSA 382-A:2-725(2) and trigger the discovery rule provision contained therein. The defendant contends that the general statement that the windows are coated in preservative that "would protect 'permanently' against rot" fails to identify a specific date or period of time regarding the duration of the warranty and, therefore, fails to qualify as a promise of future performance for the purpose of invoking the discovery rule. Therefore, the defendant asserts, the four-year statute of limitations accrued in 1986 upon delivery of the windows and this claim should have been dismissed.

The plaintiff disagrees, arguing that the warranty language is sufficiently specific to qualify as a promise of future performance and trigger the discovery rule. Consequently, the plaintiff asserts this claim was timely because he initiated it within four years of 1998, when he first reasonably should have known of the pervasiveness of the rot damage and its causal connection to the "ineffective" preservative.

The scope of the future performance exception is an issue of first impression for this court. In New Hampshire, an express warranty cause of action is generally derived from applicable Uniform Commercial Code (UCC) provisions governing contracts of sale. *Brescia v. Great Road Realty Trust*, 117 N.H. 154, 157 (1977). Pursuant to the UCC, a state law breach of express warranty claim "must be commenced within four years after the cause of action has accrued." RSA 382-A:2-725(1) (1994).

> A breach of warranty claim occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.

RSA 382-A:2-725(2) (1994). In other words, in a breach of express warranty claim, the four-year statute of limitations commences upon tender of delivery except when the warranty "explicitly extends to the future performance of the goods," which triggers the application of the discovery rule, thereby tolling the statute of limitations.

The defendant urges us to apply the majority rule, relying upon *Selzer v. Brunsell Brothers, Ltd.*, 652 N.W. 2d 806 (Wis. Ct. App. 2002), to support its assertion that the catalog language is not an explicit warranty of future performance because it fails to specifically identify an unambiguous specific period of time during which the warranty applies. Under the

majority rule, in order to be explicit, a warranty of future performance must: (1) specifically reference a future time in the warranty; and (2) be "unambiguous, clearly stated, or distinctly set forth." *Western Recreational Vehicles, Inc. v. Swift Adhesives, Inc.*, 23 F.3d 1547, 1550 (9th Cir. 1994); *see* 1 J. WHITE & R. SUMMERS, UNIFORM COMMERCIAL CODE § 11-9 (3d ed. 1988) (noting that extension of the normal warranty period does not usually occur, even though all warranties "in a sense apply to future performance of goods").

However, a minority of jurisdictions has found that warranty language which fails to identify a specified period of time nevertheless constitutes an explicit warranty of future performance. For instance, in *Rempe v. General Electric Co.*, 254 A.2d 577 (Conn. Super. Ct. 1969), the manufacturer sold a disposal unit to the plaintiff, warranting in pertinent part "that the unit ... would work properly during its lifetime." *Rempe*, 254 A.2d at 577. The court ruled that the "lifetime warranty" qualified as a future performance exception, while also recognizing that the specific time period referenced by the "lifetime warranty" is a question of fact "to be established by evidence." *Id.* at 579.

We decline the defendant's invitation to adopt the majority rule and apply the minority rule in this instance. Though it does not identify a specific period of time in years, this warranty unambiguously and clearly identifies that the preservative permanently protects against rot and decay. "Permanent" is defined as "continuing or enduring (as in the same state, status, place) without fundamental or marked change: not subject to fluctuation or alteration: fixed or intended to be fixed." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1683 (unabridged ed. 2002). Therefore, we conclude this warranty language is analogous to the "lifetime warranty" identified in *Rempe* in that it clearly conveys the intent that the preservative will protect the wood for a future period of time—permanently—against a specific problem: rot damage.

Furthermore, while the first portion of the catalog warranty refers to features of the millwork, namely that it is "deep treated in a dry vac process with pesticide and water repellant solution," the second portion promises the preservative will "permanently protect against rot," language that refers to future performance. When considered together, as they appear in the catalog, the two phrases provide a precise description of the process upon which the promise of permanent protection relies. To interpret this language more stringently would deprive the consumer of the statutory protections of the UCC.

■ We disagree with the Wisconsin Court of Appeals' determination in *Selzer*. While we recognize that RSA 382-A:2-725(2) is also intended "to

give businesses a clearly defined limit on the period of their potential liability," *id.* at 813, we conclude that our determination in this case strikes the appropriate balance. The express language of the warranty would lead a consumer to believe that the windows were treated with a preservative process that provided permanent protection against rot. This language clearly refers to the future performance, and, therefore, we conclude that this warranty is sufficiently explicit to satisfy the future performance exception, invoke the discovery rule, and survive, as a matter of law, the defendant's pre-trial motions. Thus, we find that the trial court did not err in denying the defendant's pre-trial motions and determining that this claim was timely filed.

Our analysis of the discovery rule as it applies to the plaintiff's strict liability claim is equally applicable to the breach of express warranty claim. Accordingly, for the reasons previously stated, we conclude that: (1) the trial court's submission of this issue to the jury was neither untenable nor unreasonable; (2) the jury's factual determination, that the plaintiff did not "know, or in the exercise of reasonable diligence should have known, prior to November 12, 1996, that the windows were defective and that he sustained property damage as a result," was supported by the weight of the evidence and not the result of mistake, impartiality or corruption; and (3) the trial court's denial of the defendant's motions for directed verdict and JNOV were not unsustainable exercises of discretion.

*C. Breach of the Magnuson-Moss Act (Express Warranty)*

The defendant also asserts that the plaintiff's Magnuson-Moss claim was untimely filed and should have been dismissed. The defendant argues this federal claim is governed by RSA 382-A:2-725, and proffers the same arguments it raised regarding its breach of express warranty claim.

The plaintiff counters that section 2310(e) of the Magnuson-Moss Act defers the date of accrual of a claim until the defendant has notice and opportunity to cure the defect, which, in this case, occurred after the plaintiff filed a report documenting the window damage with the defendant. The plaintiff also asserts that federal common law, which generally applies the discovery rule, governs the date of accrual.

Therefore, we first consider which statute of limitations applies to the Magnuson-Moss claim. "[W]here a federal statute does not contain an express limitations period, federal courts apply the most analogous state statute of limitations." *Lowe v. Volkswagen of America, Inc.*, 879 F. Supp. 28, 30 (E.D. Pa. 1995). Because the Magnuson-Moss Warranty Act establishes rules for warranties of consumer products, it is most closely

analogous to the UCC. *Id.* Therefore, RSA 382-A:2-725 applies to this claim.

■ Furthermore, we find no merit in the plaintiff's assertion that the applicable statute of limitations does not accrue until after the buyer has given the seller notice and opportunity to cure pursuant to section 2310 of the Magnuson-Moss Act. Section 2310 enumerates procedures that must be followed when filing a claim under the Magnuson-Moss Act. As such, it neither addresses nor establishes a statute of limitations period and is, therefore, not applicable to this issue.

Therefore, we conclude this claim was timely filed for the same reasons stated in our analysis of the timeliness of the breach of express warranty claim.

*II. Simultaneous Tort and Contract Claims*

The defendant argues that the court erred in denying its motion *in limine* and permitting the plaintiff to simultaneously maintain both a strict liability claim and a breach of the Magnuson-Moss Act claim. Specifically, the defendant asserts that the availability of a warranty claim prohibits a strict liability claim for property damage. Since the defendant alleges an error of law, we will review the trial court's legal conclusions *de novo. See State v. Carbo,* 151 N.H. 550, 552 (2004).

As a preliminary matter, we note that the cases upon which the defendant relies reference the availability of a strict liability claim in the context of a *state* law warranty or negligence claim. As such, they do not govern whether a strict liability claim is available in the context of a *federal* breach of warranty claim (the Magnuson-Moss claim).

Further, we are aware of no authority supporting the conclusion that the availability of a breach of warranty claim precludes a strict liability claim in the circumstances present here. Nothing precludes the plaintiff from alleging different theories of recovery. *See Phillips v. Verax Corp.,* 138 N.H. 240, 249 (1994) (recognizing plaintiff is entitled to allege different theories of recovery but may not collect multiple recoveries for the same loss). Moreover, state strict liability claims and federal Magnuson-Moss claims have been raised in the same litigation. *See Barton v. The Hertz Corp.,* 35 F. Supp. 2d 1377 (M.D. Fla. 1999); *Chase v. Kawasaki Motors Corp.,* 140 F. Supp. 2d 1280 (M.D. Ala. 2001); *Giddings v. Bristol-Myers Squibb Co.,* 2001 U.S. Dist. LEXIS 7023, at *1 (D. Md. 2001).

■ Accordingly, we find the trial court did not err in determining the plaintiff was entitled to simultaneously assert both a strict liability claim and a breach of the Magnuson-Moss Warranty Act claim.

*III. Issues Pertaining to the Strict Liability Claim*

*A. Prima Facie Case*

The defendant asserts that the trial court erred in denying its motion to set aside the verdict, arguing the plaintiff failed to plead and prove a *prima facie* case of strict liability. Specifically, the defendant argues that the plaintiff failed to: (1) allege the product's design was unreasonably dangerous; and (2) introduce evidence of dangerousness at trial.

 We have adopted the doctrine of strict liability of manufacturers for product defects in section 402A (1) of the RESTATEMENT (SECOND) OF TORTS, which states: "One who sells any product in a defective condition unreasonably dangerous to the user or consumer *or to his property* is subject to liability for physical harm thereby caused to the ultimate user or consumer . . . ." RESTATEMENT (SECOND) OF TORTS § 402A (1) (1965)" (emphasis added); *see Price*, 142 N.H. at 388; *Royer v. Catholic Med. Ctr.*, 144 N.H. 330, 331 (1999). "A design defect occurs when the product is manufactured in conformity with the intended design but the design itself poses unreasonable dangers to consumers." *Price*, 142 N.H. at 389 (quotation omitted).

 For a product to be unreasonably dangerous, it "must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics." *Vautour v. Body Masters Sports Indus.*, 147 N.H. 150, 154 (2001) (quotation omitted). The jury determines whether a product is unreasonably dangerous by using a risk-utility balancing test. *Price*, 142 N.H. at 389. Under this approach, "a product is defective as designed if the magnitude of the danger outweighs the utility of the product." *Vautour*, 147 N.H. at 154 (quotations omitted); *see Price*, 142 N.H. at 389 (detailing the factors to be considered when implementing the risk-utility balancing test). However, the plaintiff is not required to present evidence of a safer alternative design. *Vautour*, 147 N.H. at 156. "[P]roof of an alternative design is neither a controlling factor nor an essential element that must be proved in every case." *Id.* Rather, the circumstances of each case dictate which factors may be relevant. *Id.*

 Here, the plaintiff's amended declaration, dated August 16, 2000, alleges that the window's defective condition "created an unreasonable risk" of property damage to the plaintiff's home. Given our policy to construe pleadings liberally, *see Canty v. Hopkins*, 146 N.H. 151, 155 (2001), we conclude that this language, when considered in the context of this case, adequately alleges the defective windows were unreasonably

dangerous. We find no support for the defendant's assertion that the plaintiff was required to use the exact phrase, "unreasonably dangerous," to adequately plead a *prima facie* case of strict liability.

■■■ At trial, the plaintiff submitted sufficient evidence to support a *prima facie* case for strict liability. The trial court admitted portions of pleadings and other court documents filed by the defendant in a concurrent case, *Marvin Lumber and Cedar Co. v. PPG Industries*, 223 F.3d 873 (8th Cir. 2000) (*Marvin I*), in which Marvin initiated suit against PPG Industries, the manufacturer of the defective preservative PILT, for breach of warranty. In these pleadings, Marvin admitted it was experiencing significant increases in complaints of wood rot and deterioration in windows treated with PILT. Marvin also asserted PPG's products were "defective and unreasonably dangerous" in that they "allowed the elements to penetrate the structures into which they were incorporated." Marvin also argued that PILT was defective and that the rot damage "caused substantial damage to property other than Marvin's windows and doors, including but not limited to the exterior, interior and other structural and nonstructural components and structures into which Marvin's products were incorporated." These admissions and statements provided sufficient evidence to satisfy the unreasonably dangerous element of this strict liability claim.

### B. Admissibility of Evidence

The defendant asserts that the court erred in admitting the aforementioned statements in the first trial because they are irrelevant, cumulative and highly prejudicial hearsay statements that are inadmissible pursuant to New Hampshire Rules of Evidence 401, 403, 801 and 802.

We review the trial court's decisions on the admissibility of evidence under an unsustainable exercise of discretion standard. *State v. Ainsworth*, 151 N.H. 691, 694 (2005). Therefore, the defendant must demonstrate that the trial court's rulings were clearly untenable or unreasonable to the prejudice of its case. *Id.*

■■■ "Hearsay is an out-of-court statement offered in evidence to prove the truth of the matter asserted, N.H. R. Ev. 801(c), which is not specifically excluded as non-hearsay by Rule 801(d)." *State v. Batchelder*, 144 N.H. 249, 251 (1999). A statement is non-hearsay if it is offered against a party and is "a statement by a person authorized by the party to make a statement concerning the subject." N.H. R. Ev. 801(d)(2)(C); *see Simpson v. Wal-Mart Stores*, 144 N.H. 571, 576 (1999).

▆▆▆▆▆ Generally, a party's pleading in one case may be used as an admission in another case provided it is material and relevant to the issues in the subsequent action. 32 C.J.S. EVIDENCE § 402 (1996); 2 J.W. STRONG, MCCORMICK ON EVIDENCE § 257, at 142-43 (5th ed. 1999); see William v. Union Carbide Corp., 790 F.2d 552, 556 (6th Cir. 1986) (recognizing that as party admissions, pleadings in a prior case were admissible as substantive evidence under Federal Rule of Evidence 801(d)(2)). In the instant case, the trial court allowed portions of six pleadings or court proceedings from Marvin I to be presented to the jury as prior assertions by the defendant that the preservative was defective, unreasonably dangerous, and caused substantial property damage to structures in which the windows were installed. While the warranty at issue in Marvin I was different, the underlying assertions, that the preservative was defective and caused premature wood rot to Marvin windows treated with PILT, were the same in both cases. Therefore, we find that the defendant took a contradictory position in Marvin I to that taken in the instant action. While the defendant stipulated that the preservative was ineffective in this case, we cannot conclude this stipulation is synonymous with its assertions in Marvin I. Given that the defendant's assertions in Marvin I admitted elements the plaintiff was required to prove in this case, we conclude they were inconsistent admissions that were relevant, material and admissible under Rule 801(d)(2)(C). See N.H. R. EV. 401 (defining relevant evidence).

We are not persuaded by the defendant's contention that this evidence is more prejudicial than probative and ought to have been excluded under Rule 403. This evidence directly addresses two essential elements of the plaintiff's strict liability claim. These admissions are also probative of the defendant's credibility, as this evidence directly contradicts the defendant's position in this case. There is no evidence that the jury in the instant case heard any testimony regarding the specific details of Marvin I other than the defendant's inconsistent admissions.

Moreover, we conclude there is no merit to the defendant's contention that the court erred in admitting this evidence without proper foundation. While arguing this issue in both the pre-trial motion in limine and at trial, the plaintiff established that the statements in Marvin I were contained in pleadings that originated with the defendant or its counsel and represented the defendant's position. On the one occasion that the speaker was not identified on the record, the plaintiff offered sufficient information regarding the context of the statements from which the trial court could reasonably conclude that the statement was made by the defendant's counsel on its behalf. Additionally, the defendant offers no support, nor are we aware of any, for its assertion that the admissions must be sworn statements in order to be admissible.

██ Accordingly, the trial court's determinations that: (1) the probative value of the statements outweighs any prejudice to the defendant; and (2) this non-hearsay evidence is admissible pursuant to Rule 801(d)(2)(C), are neither untenable nor unreasonable.

*C. Jury Instructions*

The defendant argues the court improperly instructed the jury regarding the elements of the strict liability claim. While conceding that the trial court's jury instruction on design defect "was not legally incorrect," the defendant argues that the jury instruction should not have been given because the plaintiff failed to prove that the product design created a defective condition unreasonably dangerous to the user. We disagree.

"A jury charge is sufficient as a matter of law if it fairly presents the case to the jury such that no injustice is done to the legal rights of the parties." *Carignan v. N.H. Int'l Speedway*, 151 N.H. 409, 418 (2004). "In a civil case, we review jury instructions in context." *Id.* "We will reverse if the charge, taken in its entirety, fails to explain adequately the law applicable to the case in such a way that the jury could have been misled." *Id.*

██ The plaintiff correctly points out that the trial court's jury instructions were taken almost verbatim from the defendant's requested instructions, with the exception of the second element. The trial court gave the following instruction:

> The plaintiff must prove all of the following six elements in order to recover under his claim for strict liability.
>
> . . . .
>
> Two. The product was in a defective condition unreasonably dangerous to the user/consumer, *or to his property.*

(Emphasis added.) The emphasized portion of the jury instruction is the only portion not present in the defendant's requested instructions. This jury instruction correctly tracks the language of section 402A(1) of the RESTATEMENT (SECOND) OF TORTS. Thus, the trial court's jury instruction accurately reflects the applicable law, and we uphold the trial court's jury instruction on the elements of the strict liability claim.

*D. Economic Loss Doctrine*

The defendant asserts the plaintiff's strict liability claim was barred, as a matter of law, to the extent that it sought damages for economic loss;

namely, costs related to the defective windows themselves, *including the* costs of repairing or replacing those windows. Specifically, the defendant contends the trial court erred in denying its: (1) motion for summary judgment, which attempted to limit the plaintiff's recovery to damages other than the economic losses; and (2) motion to set aside the strict liability verdict, alleging the court improperly instructed the jury regarding damages.

The plaintiff argues that he is entitled to recover the costs of repairing and replacing the windows as his reasonably incurred mitigation expenses to avoid further damage from water leakage due to wood rot in the windows.

We have previously recognized that a plaintiff may not ordinarily recover damages for purely economic loss in tort or products liability claims. *Border Brook Terrace Condo. Ass'n v. Gladstone*, 137 N.H. 11, 18 (1993). In the products liability context, economic loss is characterized as damage that occurs to the inferior product itself, through deterioration or non-accidental causes. *Ellis v. Robert C. Morris, Inc.*, 128 N.H. 358, 364 (1986). Thus, in this context, economic losses encompass both damage to the defective product itself and the diminution in value of the product because it is inferior in quality. *Id.* However, "[w]hen a defective product accidentally causes harm to persons or property [other than the defective product itself], the resulting harm is treated as personal injury or property damage." *Id.* (quotation omitted); *see* RESTATEMENT (THIRD) OF TORTS, Products Liability § 21(c) (1997) (recognizing that in the product liability context, harm to persons or property includes economic loss if caused by harm to plaintiff's property other than the defective product itself).

Here, the plaintiff alleges that he sustained substantial property damage to his home caused by water leakage from the windows treated with the defective preservative. Further, in its memorandum of law supporting its motion for summary judgment, the defendant concedes that the plaintiff arguably sustained "damage to other property." The record reveals that when the summary judgment motion was considered by the trial court, it correctly found there were disputed material facts related to the origin, amount and extent of damages sustained by the plaintiff as a result of the window rot and accompanying water damage, and properly denied the defendant's motion for summary judgment. *See Carbone v. Tierney*, 151 N.H. 521, 527 (2004) (explaining summary judgment standard).

We next consider whether the trial court improperly instructed the jury regarding the damages available under the strict liability claim. The

defendant argues that the economic loss doctrine precludes an award of damages in strict liability for costs related to the defective product itself. The defendant asserts that the trial court's jury instruction, which identified an exception for "damages in mitigation," was erroneous and misled the jury as to the proper measure of damages.

We will reverse the trial court's decision if the jury instructions, when reviewed in context, fail to accurately explain the applicable law in such a way that the jury could have been misled. *See Carignan*, 151 N.H. at 418.

The trial court gave the following jury instructions:

> The damages the plaintiff is entitled to recover in his claim for strict liability are limited. If you find that the plaintiff has proven each of the elements of his strict liability claim, the only damages he may recover are damages for the injury, if any, the plaintiff sustained to property other than the windows themselves unless these are damages in mitigation.
>
> . . . .
>
> Duty to mitigate. The plaintiff ... is obligated to exercise reasonable care and effort to avoid loss and to minimize damages. He may not recover for losses which could have been prevented by him making reasonable efforts without undue risk or expense or humiliation on his part. He may also recover expenditures reasonably incurred to avoid or minimize damages.

In addition to recognizing the economic loss doctrine, we have determined that a plaintiff has a general duty to mitigate damages. *Flanagan v. Prudhomme*, 138 N.H. 561, 575 (1994). The doctrine of avoidable consequences is a specific type of mitigation available in property torts, which states that "a party cannot recover damages flowing from consequences which that party could reasonably have avoided." *Mailloux v. Town of Londonderry*, 151 N.H. 555, 563 (2004) (quotations and citation omitted). Therefore, this doctrine "requires a plaintiff to take all reasonable steps to mitigate damages after he or she has been tortiously injured." *Id.*

While the economic loss doctrine precludes the plaintiff from recovering damages for the defective products themselves (the windows), there exists a concurrent duty of mitigation, requiring the plaintiff to take reasonable measures to avoid damages to other personal property flowing from the defective windows, thereby allowing recovery for attendant mitigation expenses. To conclude otherwise would lead to an absurd result. Here, the defective product was allegedly causing ongoing damage to

other property and the plaintiff had a clear duty to mitigate damages flowing from the defective windows. Thus, to the extent that the new windows were reasonably required to prevent further water leakage and related property damage, the plaintiff was entitled to recover the cost of the windows.

■ The defendant asserts that this allows the plaintiff to circumvent the economic loss doctrine by allowing him to recover the cost of the defective product, which is precluded by the economic loss doctrine, as a cost of mitigation. We disagree. Were we to adopt the defendant's interpretation of the economic loss doctrine in circumstances where the defective product is causing ongoing damage to other property, it would place plaintiffs in the untenable position of having to choose between potentially absorbing the costs of mitigating the ongoing damage to other property or doing nothing while the attendant property damage continues to accrue. We decline to adopt such an interpretation. The economic loss doctrine and the duty to mitigate are not mutually exclusive. Rather, they coexist, and in circumstances where the defective product is causing ongoing damage to other property, we conclude the plaintiff is entitled to recover reasonable expenditures incurred to avert further property damage. RESTATEMENT (SECOND) OF TORTS § 919(2) (1979).

■ It is within the province of the jury, as fact finders, to determine whether a portion of the plaintiff's requested damages were incurred in mitigation. Furthermore, the jury is presumed to follow the court's instructions. *Nilsson v. Bierman*, 150 N.H. 393, 403 (2003). The jury instructions pertaining to the economic loss doctrine and the duty to mitigate under the doctrine of avoidable consequences accurately reflected the applicable law in both instances. The trial court expressly instructed the jury that the plaintiff may recover damages "sustained to property, other than the windows [the defective products] themselves unless these are damages in mitigation." Additionally, the subsequent jury instruction accurately describes mitigation as avoiding loss or minimizing damages as well as explains that such expenditures must be reasonably incurred. Both instructions were clear, accurate and correctly interpreted the relationship between the economic loss doctrine and the plaintiff's duty to mitigate. Thus, we cannot conclude they misled the jury as to the proper measure of damages. *See Carignan*, 151 N.H. at 418.

During trial, the jury heard testimony and evidence regarding the damages sustained by the plaintiff and then made the determination, pursuant to the jury instructions, regarding whether the costs pertaining to the replacement windows themselves constituted economic losses or were reasonably incurred to mitigate further property damages. The trial

court correctly found that whether certain economic losses constitute property damage pursuant to the doctrine of avoidable consequences is an issue of fact for the jury to decide. Accordingly, the damages sought by the plaintiff in strict liability were not barred, as a matter of law, by the economic loss doctrine. We also conclude there was no error in the trial court's jury instruction regarding the measure of damages in the strict liability claim.

*E. Remittitur*

Next, the defendant contends that the trial court erroneously denied its motion to reduce damages, arguing the plaintiff's damage award on the strict liability claim is conclusively against the weight of the evidence and manifestly exorbitant. We disagree.

"Direct review of a damages award is the responsibility of the trial judge, who may disturb a verdict as excessive (or inadequate) if its amount is conclusively against the weight of the evidence and if the verdict is manifestly exorbitant." *Transmedia Restaurant Co. v. Devereaux*, 149 N.H. 454, 462 (2003). "The proper standard for the trial court's review of a jury award is whether the verdict is fair." *Carignan*, 151 N.H. at 415. It is the trial judge's responsibility to both ensure that the trial is fairly conducted and correct or vacate what turns out to be an unfair result. *Id.* "Whether remittitur is appropriate rests with the trial court's sound discretion." *Id.* "Absent an unsustainable exercise of discretion, we will not reverse the trial court's decision." *Id.* On review, we will not attempt to "ascertain or divine the one and only correct verdict." *Bennett v. Lembo*, 145 N.H. 276, 282 (2000). "The party seeking to modify the verdict's amount bears a heavy burden." *Id.*

At trial, extensive testimony and evidence was admitted regarding the location of the windows that contained rot, the damage that occurred to other property as a result of the rot and attendant water leakage, and the construction that was required to remove and replace the damaged windows. The jury heard testimony regarding drywall damage due to water leakage as well as extensive damage to the oak floors. The plaintiff detailed which expenses were related to the removal and replacement of the damaged windows, and which were incurred as part of other renovations to the home and were not included in his requested damages. The jury heard detailed testimony regarding the necessity of disturbing the surrounding structures in order to remove one of the damaged dormer windows. The plaintiff also testified that he chose not to replace the other damaged dormer window after experiencing the process involved in replacing the first dormer window.

A master carpenter who had worked on the plaintiff's home testified regarding the serious leaks that caused warping to the wood floor and rot in some of the sills. This witness also testified that replacing the damaged windows was necessary to prevent additional property damage. Additionally, the jury heard testimony that the cost of repairing the attendant damage to the surrounding structures if the windows had not been replaced would have likely been greater than the cost of replacing the windows themselves. Both the master carpenter and the plaintiff testified that no repair work was undertaken that was not related to the windows that had started to rot or other property that was damaged by the associated water leaks. Finally, the plaintiff testified that: (1) he incurred no costs to improve the house beyond its prior condition; (2) he was aware of no cheaper alternative; and (3) the replacement windows were not architecturally equivalent to the windows that contained rot damage, resulting in a house that is not as nice as it was before.

Having previously determined that the economic loss doctrine does not preclude damages for replacement and/or repair costs that were incurred in mitigation and pertained to the windows themselves, we conclude there is sufficient evidence and testimony to support the jury's damage award. In light of the evidence presented at trial, we cannot conclude the damages were manifestly exorbitant. Accordingly, we conclude that the trial judge did not commit an unsustainable exercise of discretion in upholding the jury award for the strict liability claim.

*IV. Issues Pertaining to the Breach of Warranty and Breach of Magnuson-Moss Act Claims*

*A. Failure to Delay the Second Trial*

The defendant asserts that the trial court lacked jurisdiction to conduct the second trial on the Magnuson-Moss and breach of express warranty claims given the pendency of its appeal of the first trial, which included several issues that pertained to the Magnuson-Moss and breach of express warranty claims.

It is undisputed that the defendant appealed the plaintiff's verdict on the strict liability claim in the first case, while also seeking review of questions pertaining to the Magnuson-Moss and breach of express warranty claims, which had resulted in a mistrial. By partial acceptance order dated August 1, 2002, we declined to accept the questions related to the mistried counts. On January 23, 2003, we subsequently suspended our briefing order and requested that the parties file memoranda addressing whether the first appeal should be held in abeyance pending resolution of the remaining issues by the superior court. After receiving the parties'

840

memoranda, we left the suspension of briefing in place, and ordered the defendant to notify us after the proceedings in superior court had concluded.

 While our order did not explicitly remand this case to the superior court to the extent necessary for it to proceed with the second trial, the obvious implication of our order was to do exactly that. *Cf. Rautenberg v. Munnis*, 107 N.H. 446, 448 (1966) (when supreme court ascertains that remand is necessary to complete record or prevent injustice, the case is continued in supreme court and remanded to the trial court). Accordingly, we conclude there is no merit to the defendant's assertion that the trial court lacked jurisdiction to conduct the retrial of the Magnuson-Moss and breach of warranty claims.

*B. Failure to Qualify as a Written Warranty*

With respect to both trials, the defendant argues the trial court erred by denying its motions for directed verdict and JNOV on the plaintiff's Magnuson-Moss claim and breach of warranty claims.

*1. The Breach of Express Warranty Claim*

In addition to appealing the trial court's denial of its motions for directed verdict and JNOV, the defendant also argues the trial court erred in partially granting the plaintiff's motion for directed verdict and determining that representations contained in the catalog constituted, as a matter of law, a warranty for the purposes of the State breach of express warranty claim. The defendant asserts that the record contains evidence from which a reasonable juror could find that: (1) the defendant's sales catalog is an educational brochure and is, therefore, not a warranty; and (2) the representations in the catalog were not a part of the basis of the bargain for the windows installed in the plaintiff's home.

"A trial court may grant a motion for a directed verdict only if it determined, after considering the evidence and construing all inferences therefrom most favorably to the non-moving party, that no rational juror could conclude that the non-moving party is entitled to any relief." *Dillman v. N.H. College*, 150 N.H. 431, 434 (2003). We uphold a trial court's ruling on a motion for directed verdict "when the record supports the conclusion that the trial court did not commit an unsustainable exercise of discretion." *Id.*

 RSA 382-A:2-313 provides, in pertinent part:

(1) Express warranties by the seller are created as follows:

(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

(b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

RSA 382-A:2-313(1) (1994). To create an express warranty, the seller is not required to use formal words, such as "warranty" or "guarantee" or have the specific intention to create a warranty. RSA 382-A:2-313(2). Further, an affirmation of the value of the goods or a statement of the seller's opinion or commendation of the goods does not create a warranty. *Id.* Therefore, to create an express warranty, the promise or affirmation of fact must both relate to the goods and become part of the basis of the contractual bargain. *Fassi v. Auto Wholesalers of Hooksett*, 145 N.H. 404, 406 (2000).

 We first consider whether the representations in the defendant's catalog constitute an affirmation of fact relating to the windows, or whether they describe a particular feature of the windows as part of an educational brochure. The representations assert that the windows were deep treated to permanently protect against rot and decay, which we find constitutes an affirmation of fact related to the windows. When considered in combination with the additional detailed description of the exact process and solution used to treat the wood, the representations are more than a mere opinion or commendation of the goods. Accordingly, the language of the catalog warranty satisfies the first prong of the test to determine if it is an express warranty for the purposes of this claim.

 We next consider whether this affirmation of fact was part of the basis of the bargain. That an affirmation is contained in a brochure, catalog, or advertisement does not preclude a finding that it is a warranty provided it formed part of the basis of the bargain. *Interco Inc. v. Randustrial Corp.*, 533 S.W.2d 257, 262 (Mo. Ct. App. 1976). However, what constitutes "part of the basis of the bargain" is difficult to define. *Liberty Lincoln-Mercury, Inc. v. Ford Motor Co.*, 171 F.3d 818, 825 (3d Cir. 1999). "Ordinarily a guarantee or promise in an advertisement or other description of the goods becomes part of the basis of the bargain if it would naturally induce the purchase of the product and no particular reliance by the buyer on such statement needs to be shown." *Cipollone v. Liggett Group, Inc.*, 893 F.2d 541, 563 (3d Cir. 1990). Authorities are

divided as to whether a buyer's reliance upon the affirmation is a necessary element of proving that the affirmation was part of the basis of the bargain under section 2-313 of the UCC as codified in RSA 382-A:2-313. *Id.* at 564; *see* 2 L. FRUMER & M. FRIEDMAN, PRODUCTS LIABILITY § 9.02(2), at 9-27 (2000) (recognizing the official comments to the UCC provide little guidance to the relationship between the basis of the bargain and reliance). This is a matter of first impression for this court.

Section 2-313 does not define "part of the basis of the bargain." The UCC is an adaptation of section 12 of the Uniform Sales Act (USA) and is basically the same except for the replacement of the USA's express reliance requirement with the UCC's "part of the basis of the bargain" requirement. *Cipollone,* 893 F.2d at 565; *see* 1 J. WHITE & R. SUMMERS, UNIFORM COMMERCIAL CODE § 9-5, at 448 (1995). Consequently, section 2-313 omits any reference to reliance; instead, it requires only that the affirmation become "part of the basis of the bargain." *Id.* at 449. The extent to which the law has been changed to remove the reliance requirement is unclear. *Id.*

A majority of jurisdictions continues to find that reliance is an essential element of an express warranty claim. *Cipollone,* 893 F.2d at 564; *Torres v. Northwest Eng'g Co.,* 949 P.2d 1004, 1013 (Haw. Ct. App. 1998); *see* FRUMMER, *supra* at 9-28 (collecting cases). A minority of jurisdictions has adopted the opposite approach, and eliminated the reliance requirement in an effort to satisfy the "part of the basis of the bargain" language in the UCC. *See* FRUMMER, *supra* at 9-28; *Torres,* 949 P.2d at 1013. This interpretation supports the underlying purpose of the law of warranty, which is to determine what it is the seller has agreed to sell, thereby making reliance irrelevant. *See* RSA 382-A:2-313 comment 4. As some jurisdictions have noted, "this interpretation drains all substantive meaning from the phrase 'basis of the bargain,'" thereby allowing the buyer to collect even if the buyer was unaware of the existence of the warranty. *Cipollone,* 893 F.2d at 566-67.

Both of these positions are inconsistent with the official comments to section 2-313 of the UCC. Official Comment 3 states in pertinent part:

> In actual practice affirmations of fact made by the seller about the goods during a bargain are regarded as part of the description of those goods; *hence no particular reliance on such statements need be shown* in order to weave them into the fabric of the agreement. Rather, *any fact which is to take such affirmations, once made, out of the agreement requires clear affirmative proof.* The issue normally is one of fact.

(Emphasis added.) Furthermore, comment 8 states that "all of the statements of the seller [become part of the basis of the bargain] *unless good reason is shown to the contrary.*" (Emphasis added.) Comment 7 states that "the precise time when words of description or affirmation are made . . . is not material. The sole question is whether the language . . . [is] fairly to be regarded as part of the contract." Thus, the majority position that reliance is an essential element under section 2-313 is clearly contrary to the plain language of section 2-313 and comment 3. Likewise, the minority position eliminating any reliance requirement is also contrary in that it nullifies the phrase "part of the basis of the bargain," thereby allowing a buyer to recover on a breach of warranty claim without being aware of the existence of the statements when the bargain was being negotiated.

A few jurisdictions have adopted an intermediate third approach, concluding that under section 2-313, once the buyer has become aware of the affirmation of fact or promise, the statements are presumptively part of the basis of the bargain. *Id.* at 568; *Torres*, 949 P.2d at 1015. The burden then shifts to the seller to prove, by clear affirmative proof, that the resulting bargain did not rest *at all* on the seller's statements. *Torres*, 949 P.2d at 1015; *see Cipollone*, 893 F.2d at 568; *Keith v. Buchanan*, 220 Cal. Rptr. 392, 398 (Dist. Ct. App. 1985) (seller's warranty is presumptively part of the basis of the bargain, and it is the seller's burden to prove that the resulting bargain did not rest at all on the representation); *Bysom Enter. v. Peter Carlton Enter.*, 641 N.E.2d 838, 843 (Ill. App. Ct. 1994) (warranties in a purchase agreement are *prima facie* evidence that they are part of the bargain, and the burden of disproving this is on the seller). The issue of whether the seller has proved, by clear affirmative proof, that the seller's statements were not at all part of the basis of the bargain is one of fact. *Torres*, 949 P.2d at 1014; RSA 382-A:2-313 comment 3; *see Chellman v. Saab-Scandia AB*, 138 N.H. 73, 82 (1993) (recognizing whether advertising creates an express warranty is a question for the jury).

 We adopt the intermediate approach when deciding whether representations in a catalog or brochure constitute part of the basis of the bargain in a breach of express warranty claim. We are persuaded that this approach strikes the proper balance. The plain language of section 2-313 requires that the affirmation be *part* of the basis of the bargain, and the corresponding official comments make it clear that "no particular reliance on such statements need be shown [by the buyer]." RSA 382-A:2-313 comment 3 (emphasis added). Thus, the buyer need not show that he or she would not have entered into the agreement absent the seller's

statements. *Torres*, 949 P.2d at 1014. Nor is the buyer required to show that the seller's statements were a dominant factor inducing the agreement. *Id.* at 1015.

██ In order to become part of the basis of the bargain, the buyer must have been aware of the affirmation of fact or promise at some point in the bargaining process. *Cipollone*, 893 F.2d at 567; *Torres*, 949 P.2d at 1015. To satisfy this requirement, a plaintiff claiming breach of express warranty based upon a representation in a catalog or brochure would have to prove, at a minimum, that he or she read, heard, saw or was otherwise aware of the representation in the catalog or brochure. *Torres*, 949 P.2d at 1015; *Cipollone*, 893 F.2d at 567. Therefore, the dispositive issues are: whether the statements were of the type that would naturally induce the purchase of the product; and whether the buyer was aware of the statements during the negotiating process.

██ The presumption that a seller's statement becomes a part of the basis of the bargain can be overcome. *Torres*, 949 P.2d at 1015. For instance, "the buyer's actual knowledge of the true condition of the goods prior to the making of the contract may make it plain that the seller's statement was not relied upon as one of the inducements for the purchase." *Id.* (quotations and citations omitted). Additionally, a seller's statement will not be presumed to be part of the basis of the bargain when the buyer knew the statement to be false or was not influenced by it, or when the statement was not made until after the sale of the product. *Id.*

██ In this case, the trial court determined that the representations in the catalog constituted an express warranty, pursuant to RSA 382-A:2-313, as a matter of law. The trial court reasoned that there was "no reasonable question that the catalogue . . . is a catalogue that existed at the time that the plaintiff purchased his windows." The court found that the representation regarding permanent protection of the windows "becomes a part of the goods that were sold and, therefore, a part of the basis of the bargain." We affirm the trial court's determination that the representations in the catalog assert that the windows were permanently protected against rot damage. We also affirm its ruling that this representation constitutes an affirmation of fact that would qualify as an express warranty under the UCC, provided it was part of the basis of the bargain. However, whether the representation was part of the basis of the bargain is a factual determination that should have been decided by the jury. *See Werner v. Montana*, 117 N.H. 721, 726 (1977) (analyzing evidence, which was presented at trial, from which the fact finder could

conclude that the affirmations constituted an express warranty); *Chellman*, 138 N.H. at 82.

Here, the jury heard evidence from which it could have concluded that the representations in the catalog were part of the basis of the bargain. For instance, the plaintiff testified that he relied upon representations in the catalog regarding the durability of windows manufactured by Marvin. However, he also testified that all of his paperwork pertaining to the construction of his residence was destroyed in 1987, and the catalog admitted at trial was a copy obtained from a worker involved in his home construction. While the plaintiff could not identify the exact document that he saw in 1986, he testified that he did "see what Marvin had available, and the only thing that Marvin had available was the catalog that showed each of the windows, the stock windows that were in place . . . ." While this evidence could support the trial court's determination that the catalog representations were part of the basis of the bargain, given the credibility issues raised, it is not so overwhelmingly in favor of the plaintiff that no contrary verdict could stand. Therefore, we conclude that this determination is a factual one for the jury.

Accordingly, we conclude the trial court erred in directing a verdict on the question of whether the catalog representations were part of the basis of the bargain and thus constituted an express warranty pursuant to RSA 382-A:2-313. We vacate the verdict on the breach of express warranty claim, and remand for further proceedings consistent with this opinion.

### 2. Magnuson-Moss Claim

The defendant asserts that the catalog warranty does not qualify as a written warranty under the Magnuson-Moss Act because it fails to specify that the windows will meet a specified level of performance over a specified period of time as required by 15 U.S.C.A. § 2301(6)(A).

The Magnuson-Moss Act (the Act) is a remedial statute designed to protect consumers from deceptive warranty practices. *Skelton v. General Motors Corp.*, 660 F.2d 311, 313 (7th Cir. 1981); *see* 2 L. FRUMER & M. FRIEDMAN, PRODUCTS LIABILITY § 9.06(1), at 9-73 to 9-74 (1998). It applies to written warranties as well as "implied warrant[ies] arising under State law (as modified by sections 2308 and 2304(a) of this title) in connection with the sale by a supplier of a consumer product." 15 U.S.C.A. § 2301 (6) & (7)(1997). While the Act does not require a manufacturer or seller to extend a warranty with a product, "any 'written warranty' offered with a consumer product is subject to the Act's regulatory requirements." *Skelton*, 660 F.2d at 314. The purpose of the Act is "to improve the adequacy of information available to consumers, prevent deception, and

improve competition in the marketing of consumer products." 15 U.S.C.A. § 2302(a).

Section 2310(d)(1) creates a civil cause of action for a consumer who is damaged by a supplier, warrantor, or service contractor who fails to comply with its obligations under a "written warranty." 15 U.S.C.A. § 2310(d)(1). The Act defines "written warranty," in pertinent part, as:

> any written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer which relates to the nature of the material or workmanship and affirms or promises that such material or workmanship is defect free and will meet a specified level of performance over a specified period of time ... which ... becomes part of the basis of the bargain between the supplier and a buyer for purposes other than resale of such product.

15 U.S.C.A. § 2301(6)(A). Representations regarding product information disclosures and features of a particular product, however, such as energy efficiency ratings of electrical appliances and care labeling of wearing apparel, do not qualify as written warranties for purposes of the Act. 16 C.F.R. 700.3 (2005) (interpreting the written warranty requirement under the Act).

█ The representations contained in the catalog stated that "all exterior wood [in the windows] is deep treated in a dry vac process with a pesticide and water repellant solution to permanently protect against rot and decay." This language identifies a level of performance; namely, that the preservative will perform at such a level that the windows do not rot. It also identifies a specified period of time—permanently—which we have previously determined is analogous to the life of the product. To conclude otherwise would circumvent the basic purpose of the Act—to protect consumers from deceptive warranty practices. The express language of the catalog warranty, and the use of the adverb permanently, would lead a consumer to conclude that a window treated with the preservative, in the particular manner described, would not rot during its lifetime. Moreover, the detailed description of the process used to provide the permanent protection further supports this determination. Therefore, the representations in the catalog constitute a written warranty for purposes of the Magnuson-Moss claim.

The defendant relies upon *Skelton*, 660 F.2d 311 (7th Cir. 1981), to support its assertion that the catalog warranty does not comply with the Act's requirements for a written warranty. In *Skelton*, the basis of the plaintiffs' claim was brochures, manuals, consumer advertising and other

forms of communications that represented that certain automobiles contained particular transmissions (THM 350), or "transmissions of similar quality and performance . . . and that [such transmissions] would meet a specified level of performance." *Skelton*, 660 F.2d at 312. The plaintiffs alleged that General Motors' undisclosed substitution of inferior transmissions was actionable under the Act. *Id.* at 313.

The district court concluded that this warranty did not fall within the Act's definition of "written warranty" because "it did not affirm that the transmission would 'meet a specified level of performance over a specified period of time.'" *Id.* at 316. The Seventh Circuit Court of Appeals upheld the district court's determination that a product information disclosure without a specified time period to which the disclosure relates is not a written warranty. In a footnote, however, the court acknowledged that a representation that a "transmission would perform like a THM 350 transmission for the life of the transmission" *would* constitute a warranty for the purposes of the Act. Thus, the court recognized that representations referencing a lifetime meet the "specified period of time" requirement in the Act. *See Horton Homes, Inc. v. Brooks*, 832 So. 2d 44, 49 (Ala. 2001) (recognizing that a representation that a product was "built for a lifetime" constitutes a written warranty for the purposes of a breach of the Act). Thus, *Skelton* is consistent with our ruling.

 Similar to RSA 382-A:2-313, which requires an express warranty to be part of the basis of the bargain, the Act also requires that a written warranty be part of the basis of the bargain. The criteria for determining whether a representation was "part of the basis of the bargain" is the same in both cases. Therefore, having previously determined that whether the catalog warranty was part of the basis of the bargain was an issue of fact for the jury's determination, we also vacate and remand this issue to the trial court for further proceedings consistent with this opinion.

In the interest of judicial economy, we address the defendant's remaining issues to the extent they are likely to arise upon remand. *See State v. Tierney*, 150 N.H. 339, 345 (2003).

### C. Exclusion of Evidence of the One-Year Warranty

The defendant argues that the trial court erroneously granted the plaintiff's motion *in limine* to exclude all evidence of the one-year warranty, which allegedly applied to, and was purportedly packaged with, the windows when they were delivered to the plaintiff's home for installation in 1986. The defendant asserts this evidence was relevant to refute the plaintiff's assertion that the catalog warranty was part of the basis of the bargain.

In addition to ruling that evidence of the alleged one-year warranty was irrelevant, cumulative, and potentially confusing to the jury, the trial court ruled that it was barred by the doctrine of judicial estoppel.

We review the trial court's determination regarding the admissibility of evidence under an unsustainable exercise of discretion standard. *See Ainsworth*, 151 N.H. at 694.

The doctrine of judicial estoppel has not yet been adopted as part of New Hampshire common law. While we previously considered this doctrine in *In re Pack Monadnock*, 147 N.H. 419 (2002), we had no need to decide whether or not to adopt it based upon the facts and circumstances of that case. *In re Pack Monadnock*, 147 N.H. at 426. However, the circumstances of this case are distinguishable from *In re Pack Monadnock*, and we now adopt and apply the doctrine of judicial estoppel.

"Where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, [it] may not thereafter, simply because [its] interests have changed, assume a contrary position : . . ." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001); *see In re Pack Monadnock*, 147 N.H. at 425-26. The purpose of this doctrine is "to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *New Hampshire v. Maine*, 532 U.S. at 749-50 (citations omitted). While the circumstances under which judicial estoppel may be invoked vary with each situation, the court considers the following three factors: (1) whether the party's later position is clearly inconsistent with its earlier position; (2) whether the party has succeeded in persuading a court to accept that party's earlier position; and (3) whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. *Id.* at 750-51; *In re Pack Monadnock*, 147 N.H. at 426.

We first consider whether the defendant's position in this case is clearly inconsistent with its earlier position in the related *Marvin I* case. In *Marvin I*, Marvin argued that a warranty longer than one year applied to its windows that were treated with PILT. Here, Marvin is seeking to admit evidence that a one-year warranty is applicable to the windows. This position is inconsistent with its prior position in *Marvin I*. In this case, the trial court was presented with portions of redacted pleadings and trial testimony proffered by Marvin's counsel, or its witnesses, in *Marvin I*, which support the trial court's conclusion that the defendant took a contrary and inconsistent position regarding the existence and applicability of the alleged one-year warranty in that case. Thus, we

conclude the defendant's position in this case is clearly inconsistent with its earlier position in *Marvin I*.

Next, we consider whether the defendant succeeded in persuading the *Marvin I* court to accept its earlier position. We conclude it did. In *Marvin I*, after several of its claims survived the pre-trial motions, the defendant ultimately prevailed at trial on a theory alleging that it relied upon representations that the preservative would protect the wood products for a period longer than the one-year warranty it was arguing in this case. Furthermore, the president of the Marvin Windows division testified that it knew of these representations and incorporated them in its "marketing materials." Given that it prevailed in *Marvin I*, and collected damages in excess of one hundred million dollars, the defendant was successful in arguing its earlier position.

Finally, we conclude that the defendant would derive an unfair advantage from prevailing in *Marvin I*, based, in part, upon its assertion that it was incurring costs related to customer claims arising from the leaky and rotten windows, while denying its liability in such claims. Therefore, after considering and applying the factors to this case, we conclude the newly adopted doctrine of judicial estoppel is applicable in this instance.

While the defendant argues that the portions of redacted pleadings and trial testimony from *Marvin I* were taken out of context and misleading, the trial court concluded that "the only way that Marvin could prevail in that case would be to get out of that one year period," finding that "Marvin did take a position there that is different than the position it is taking here on the one year limited warranty." We agree that the record contains sufficient evidence to find that the defendant's position in the instant case was clearly inconsistent with its stated position in *Marvin I*. This conclusion is neither untenable nor unreasonable in light of the pleadings and transcripts presented to the trial court.

 Moreover, the defendant benefited from refuting the applicability of the alleged one-year warranty in *Marvin I*, and prevailed in that case, collecting a substantial damage award based, in part, upon its anticipated obligation to remedy the harm its customers would sustain as a result of the defectively treated windows. Thus, we find it would be manifestly unjust to allow the defendant to assume a contrary position in this case. Accordingly, we affirm the trial court's finding that evidence of the alleged one-year warranty was inadmissible at trial.

## D. General Jury Instructions

Next, the defendant argues the trial court failed to properly instruct the jury regarding the appropriate burden of proof, the elements of, and the damages available under the Magnuson-Moss and breach of warranty claims. We will reverse if a jury instruction, taken in its entirety, fails to adequately explain the applicable law in such a way that the jury could have been misled. *Carignan*, 151 N.H. at 418.

With respect to the Magnuson-Moss claim, the defendant asserts the trial court erroneously failed to instruct the jury regarding the elements necessary to determine whether the catalog warranty constituted a "written warranty" for purposes of the Act. We disagree.

At the close of the defendant's case, the trial court determined that, as a matter of law, the catalog warranty constituted a "written warranty" of future performance for the purposes of the Act. We previously concluded that this ruling was neither unreasonable nor untenable. However, we also determined that the trial court erred in removing the issue of whether the warranty formed part of the basis of the bargain from the jury. Therefore, we conclude that the trial court's jury instructions regarding the Magnuson-Moss claim accurately reflect the applicable law in this instance, except that on remand, the trial court must include instructions regarding the basis of the bargain.

With respect to the breach of warranty claim, the defendant argues the trial court erroneously failed to instruct the jury that: (1) the permanent protection statement in the defendant's sales catalog had to be the basis of the bargain between the plaintiff and the defendant; and (2) the plaintiff was required to rely on the representations in the catalog in order to constitute a warranty for the purposes of this claim.

We previously determined that in order to constitute an express warranty, pursuant to RSA 382-A:2-313, the affirmation of fact or promise must become a part of the basis of the bargain, which is a factual determination within the province of the jury. Here, the trial court erroneously determined, as a matter of law, that the catalog warranty formed the basis of the bargain and consequently erroneously failed to include a jury instruction regarding this element. However, the trial court did not err in failing to instruct the jury that the plaintiff was required to prove reliance upon the sales warranty, as we previously determined that reliance is not an element necessary to prove the representations constituted a warranty for the purposes of this claim.

## E. Jury Instruction Regarding Damages

The defendant argues the trial court failed to properly instruct the jury regarding the correct measure of damages under both the breach of express warranty claim and the claim under the Act. With respect to the breach of warranty claim, the defendant asserts that the trial court improperly omitted an instruction on the usual and customary measure of damages, substituting instead the plaintiff's repair and replacement costs without including an instruction that the defendant was entitled to an offset or credit for the plaintiff's use of the windows.

We begin by analyzing the jury instructions under RSA 382-A:2-714 and :2-715, the law applicable to the breach of express warranty claim. RSA 382-A:2-714(2) provides, in pertinent part, that "[t]he measure of damages for breach of warranty is the difference . . . between the value of the goods accepted and the value they would have had if they had been as warranted . . . ." However, "any incidental and consequential damages under the next section may also be recovered." RSA 382-A:2-714(3) (1994). Consequential damages include "injury to person *or property* proximately resulting from any breach of warranty." RSA 382-A:2-715(2)(b) (1994) (emphasis added).

Here, the plaintiff did not seek direct damages under section 2-714(2). Rather, he sought consequential damages for injury to his property that proximately resulted from the defendant's defective windows. Any costs pertaining to the windows themselves were incurred to mitigate further property damage resulting from the windows that contained rot. The plaintiff correctly points out that repair and replacement costs are recoverable under RSA 382-A:2-715(3). *See Int'l Adhesive Coating Co., Inc. v. Bolton Emerson Int'l, Inc.*, 851 F.2d 540, 546 n.7 (1st Cir. 1988).

After reviewing the jury instructions, we conclude they accurately incorporated the applicable portions of RSA 382-A:2-714 and :2-715. With respect to damages, the jury was adequately instructed regarding: the plaintiff's burden of proof; repair and replacement costs; foreseeability of the damages; and the plaintiff's duty to mitigate damages. The trial court also instructed the jury that the plaintiff "can't recover more than once for the same loss" and that the damages must "fairly and reasonably compensate the plaintiff for his loss." Additionally, the trial court properly determined that the defendant was not entitled to receive a jury instruction regarding direct damages given that the plaintiff was not seeking recovery for the value of the damaged windows themselves, other than as part of his repair and replacement costs to prevent further damage to other property.

To the extent that the defendant asserts the trial court's jury instruction incorrectly stated the correct measure of damages under the Act, we

decline to address this argument. In a footnote, the defendant argued that the trial court erroneously refused to give lengthy jury instructions regarding damages arising from the Magnuson-Moss claim. However, other than asserting that the trial court's jury instructions "incorrectly stated the applicable law," and generally referencing 15 U.S.C.A. § 2311(b), the defendant failed to adequately brief this issue. Therefore, we find this issue is not sufficiently developed for our review. *ACG Credit Co. v. Gill*, 152 N.H. 260, 264 (2005).

### F. Jury Instruction Regarding Statute of Limitations

The defendant also argues the trial court's jury instruction on the statute of limitations misstated the applicable law with respect to the burden of proof. Specifically, the defendant asserts that the trial court failed to instruct the jury that the plaintiff was required to prove that the warranty constituted a warranty of future performance of goods before the jury could consider whether the discovery rule tolled the statute of limitations.

The trial court gave the following jury instruction:

> The law provides that a plaintiff must bring his lawsuit within a certain time period. This is often referred to as the statute of limitations. In this case Mr. Kelleher was required to commence his lawsuit within four years after the date when he discovered or should have discovered Marvin's alleged breach of warranty. Mr. Kelleher commenced this action on November 12, 1999. Thus, he is barred from recovering on either of the claims asserted here if he discovered or should have discovered Marvin's breach of warranty prior to November 12, 1995. Mr. Kelleher has the burden of proving by a preponderance of the evidence that he brought this suit within the applicable time frame.

We previously determined that the trial court properly found that the warranty at issue in this case was a warranty of future performance of goods for the purposes of the statute of limitations applicable to both the breach of express warranty and Magnuson-Moss claims. Thus, the trial court properly denied the defendant's requested jury instructions on this issue, as this is a matter of law not within the province of the jury. Moreover, we find the foregoing jury instruction accurately and adequately explains the application of the discovery rule, and, therefore, we decline to reverse the trial court on this issue.

### G. *Attorney's Fees*

Finally, the defendant challenges the trial court's award of attorney's fees pursuant to the Act. The Act provides for a discretionary award of attorney's fees to a prevailing party. 15 U.S.C.A. § 2310(d)(2) (1997). In light of our decision to vacate and remand the Magnuson-Moss claim we also vacate the award of attorney's fees.

### V. *Plaintiff's Cross-appeal*

The plaintiff appeals the trial court's dismissal of his breach of implied warranty claim under the Act on the grounds that it was barred by the statute of limitations. The plaintiff argues this was error because: (1) the limitations period cannot begin to run until the statutory prerequisite of notice and failure to cure have occurred, which in this case was in 1998; and (2) federal common law, which incorporates the discovery rule, governs a claim arising under a federal statute.

The standard of review when considering a motion to dismiss is "whether the allegations in the plaintiff's pleadings are reasonably susceptible of a construction that would permit recovery." *Karch v. Baybank FSB*, 147 N.H. 525, 529 (2002) (citation omitted). We "assume the plaintiff's pleadings to be true and construe all reasonable inferences drawn therefrom most favorably to [him]." *Id.*

 In dismissing the plaintiff's breach of implied warranty claim under the Act, the trial court correctly determined that: (1) this claim is barred by RSA 382-A:2-725, the applicable statute of limitations; and (2) 15 U.S.C.A. §§ 2308(b) & 2310 do not extend or alter the limitations period. Under the Act, an implied warranty is defined as "an implied warranty arising under *State law* . . . in connection with the sale by a supplier of a consumer product." 15 U.S.C.A. § 2301(7)(1998) (emphasis added). State breach of implied warranty claims arise under the UCC. *See* 17 Am. Jur. 2d *Consumer Product Warranty Acts* § 12 (1990). Thus, the applicable statute of limitations is RSA 382-A:2-725 and not the limitations period under federal common law. *See Lowe*, 879 F. Supp. at 30 (applying the most analogous state statute of limitations).

Pursuant to RSA 382-A:2-725(1) & (2), the four-year limitations period for breach of an implied warranty accrues at tender of delivery unless it is a warranty of future performance, which then triggers the discovery rule. However, an implied warranty cannot "explicitly" extend to the future performance of goods by virtue of being "implied." *See Tourist Village Motel v. Mass. Eng. Co.*, 801 F. Supp. 903, 906 (D.N.H. 1992); *Nelligan v. Tom Chaney Motors, Inc.*, 479 N.E.2d 439, 443 (Ill. App. Ct. 1985) (recognizing discovery rule applicable to express warranties under section

2-725 of the UCC has been held inapplicable to breach of implied warranty claims).

Furthermore, as previously stated, section 2310 enumerates procedures that must be followed when filing a claim under the Act. As such, it neither addresses nor establishes a statute of limitations period and is, therefore, not applicable to this issue.

Accordingly, we conclude the trial court properly dismissed the plaintiff's claim alleging breach of implied warranty under the Act.

*Affirmed in part; vacated in part; and remanded.*

NADEAU, DALIANIS and DUGGAN, JJ., concurred.