Department of Employment Security
No. 98-730

## APPEAL OF MANCHESTER TRANSIT AUTHORITY

(New Hampshire Department of Employment Security)

June 1, 2001

*Devine, Millimet & Branch, P.A.*, of Manchester (*Mark T. Broth* and *Diane Murphy Quinlan* on the brief, and *Ms. Quinlan* orally), for the petitioner.

*Craig, Wenners & Craig, P.A.*, of Manchester (*Vincent A. Wenners, Jr.* and *Stephanie Stergiou Ferro* on the brief, and *Mr. Wenners* orally), for the respondents.

*Philip T. McLaughlin*, attorney general (*Daniel J. Mullen*, senior assistant attorney general, on the brief, and *Andrew B. Livernois* orally), for the State, as *amicus curiae.*

HORTON, J., retired, specially assigned under RSA 490:3. The petitioner, Manchester Transit Authority (MTA), appeals a decision of the appellate board of the New Hampshire Department of Employment Security (appellate board) finding the respondent school bus drivers (claimants) eligible for unemployment benefits for the week ending February 28, 1998. We reverse.

The following facts were either found by the New Hampshire Department of Employment Security Appeal Tribunal (appeal tribunal) and are not challenged here, or appear on the record before us. MTA is a public authority incorporated by the City of Manchester, pursuant to RSA 38-A:1 (2000), for the purposes of acquiring, owning, and operating a mass transportation system in Manchester. MTA has contracted with the City of Manchester School Department (school department) to provide buses and drivers to transport Manchester students in grades one through eight over specified school routes. In accordance with a collective bargaining agreement with the Amalgamated Transit Union, Local 717, MTA employs part-time operators to transport students pursuant to its contract with the school department.

The claimants were employed by MTA as part-time school bus drivers. Each filed a claim for unemployment compensation benefits for the week ending February 28, 1998, during which Manchester schools were closed for the annual February vacation. The department of employment security initially denied the claims and the appeal tribunal ruled that each of the claimants was ineligible to receive benefits based upon the claimants' employment with MTA. On further appeal, the appellate board reversed the appeal tribu-

nal's decisions and found the claimants eligible for unemployment compensation benefits based upon their MTA employment. Following the denial of motions to reconsider, MTA appealed to this court, purportedly pursuant to RSA chapter 541 (1997).

■ We note initially that MTA's appeal under RSA chapter 541 is improper. Judicial review of department of employment security decisions is provided for in RSA 282-A:67 (1999), which specifies the procedure for appealing "a final decision of the appeal tribunal as reversed, modified, or affirmed by the appellate board." Such review is "exclusive of all other methods of judicial review of unemployment compensation decisions." RSA 282-A:68 (1999). Nevertheless, the appeal was timely filed and complied with the substantive requirements of RSA 282-A:67. Accordingly, we will treat this appeal as having been brought pursuant to that statute.

■ In reviewing decisions under RSA 282-A:67, we must not "substitute [our] judgment for that of the appeal tribunal as to the weight of the evidence on questions of fact." RSA 282-A:67, V. "Furthermore, we will uphold the department's decision unless its findings or conclusions were unauthorized, affected by an error of law, or clearly erroneous in view of all the evidence presented." *Appeal of Work-A-Day of Nashua*, 132 N.H. 289, 291 (1989) (quotation omitted).

At issue here is the interpretation of RSA 282-A:31, II (1999), which provides:

> An unemployed individual shall not be eligible to receive benefits:
>
> (a) Based on services in an instructional, research, or principal administrative capacity for an educational institution . . . .
>
> (b) Based on services in any other capacity for an educational institution, including services for a service organization for any educational institution for any week which commences during a period between 2 successive academic years or terms to any individual if such individual performs such services in the first of such academic years or terms and there is a reasonable assurance that such individual will perform such services in the second of such academic years or terms;
>
> . . . .

(c) Based on services for an educational institution for any week which commences during an established and customary vacation period or holiday recess if such individual performs services in the period immediately before such vacation period or holiday recess and there is a reasonable assurance that such individual will perform such services in the period immediately following such vacation period or holiday recess.

The appeal tribunal framed the legal issue before it as "whether or not the claimant[s] performed services as . . . bus driver[s] for a service organization for an educational institution, and if so, did the claimant[s] have reasonable assurance to return to work following the February 1998 school vacation." The appeal tribunal ruled that MTA was such a service organization and that the claimants had reasonable assurance that they would return to work. The appellate board disagreed, finding that under *Appeal of Locke*, 127 N.H. 403 (1985), MTA was not a service organization.

Both the appeal tribunal and the appellate board erroneously imported the "service organization" language of RSA 282-A:31, II(b) into RSA 282-A:31, II(c). Subparagraph (b), however, applies to unemployment in any week between successive academic years or terms, whereas the week of February 28, 1998 was, as found by the appeal tribunal, "an established and customary vacation . . . period." Thus, RSA 282-A:31, II(c) is the applicable provision. Because subparagraph (c) does not refer to service organizations, we need not decide whether MTA is such an organization.

The claimants first argue that they were not providing services for an educational institution, but rather were providing services for MTA. They argue that the statute must be read to apply only to employees of educational institutions, or it would have the absurd effect of rendering ineligible for unemployment benefits any person who provides any service for a school, such as a police officer who gives a presentation to the schoolchildren or the manufacturer of the school's desks. The petitioner, on the other hand, argues that the statute is clear on its face and that the claimants provide services for the Manchester schools.

Similar statutes in other jurisdictions have been interpreted both ways. *Compare, e.g., Borough of Pleasant Hills v. Com., Etc.*, 440 A.2d 679, 681 (Pa. Commw. Ct. 1982) (eligibility exclusion did not apply to school crossing guards employed by the borough rather than by the school district) *with Fisher v. Bureau of Indian Affairs*,

318 S.E.2d 322, 323 (N.C. Ct. App. 1984) (claimants employed by Bureau of Indian Affairs but serving secondary school fell within eligibility exclusion). We conclude that the statute is ambiguous. We therefore "review legislative history to aid in our analysis." *Appeal of Routhier*, 143 N.H. 404, 406 (1999) (quotation omitted). "[O]ur goal is to apply statutes in light of the legislature's intent in enacting them, and in light of the policy sought to be advanced by the entire statutory scheme." *Appeal of N.H. Dep't of Transportation*, 143 N.H. 358, 360 (1999) (quotation omitted).

Prior to 1983, the applicable provision denied eligibility as follows:

> (d) With respect to weeks of unemployment beginning after December 31, 1977, benefits for any week which commences during an established and customary vacation period or holiday recess if he performs services *in the employ of* a public or other non-profit educational institution described in subparagraphs (b) or (c) in the period immediately before such vacation period or holiday recess and there is a reasonable assurance that he will perform any such services *in the employ of* such an educational institution in the period immediately following such vacation period or holiday recess.

RSA 282-A:31, II(d) (Supp. 1981) (emphasis added). In 1983, section II was amended to its present form, which contains the "services for" rather than the "in the employ of" language.

"Ordinarily, any material change in the language of the original act . . . is presumed to indicate a change in legal rights." *Snyder v. N.H. Savings Bank*, 134 N.H. 32, 36 (1991) (quotation omitted). Thus, we presume that the "services for" language in the amended statute means something different from "in the employ of" and therefore reject the claimants' argument that the statute applies only to employees of educational institutions.

The legislative history reveals that the amendment was introduced at the request of the University of New Hampshire to deal with employees that it hired on a percentage basis. *See* N.H.S. JOUR. 554-59 (1983). We explained the amendment's context in *Appeal of Locke*, 127 N.H. at 405:

> Employees of educational institutions, such as the university system, were hired on a percentage basis. They worked "82% time" and accepted positions fully aware that the

institutions did not expect them to work between academic semesters, and they were reasonably assured that jobs would be waiting at the end of the semester break. Some of these individuals began to file for unemployment benefits during the summer months. Since the employees were hired with the understanding that they would not work between semesters, and their positions were so defined, the legislature amended the statute with the purpose of disallowing unemployment benefits to this group.

We conclude that application of this purpose is not limited to employees of educational institutions, for employees of other entities who provide services to an educational institution may be hired with the express understanding that their expected work schedule is dictated by whether the school is open. Thus, in determining whether a claimant is covered by the eligibility exclusion of RSA 282-A:31, II(c), we look to whether the claimant was hired to work only when school is in session.

MTA's job description for part-time school bus operators states: "Part-time operators are employed during the time that school is in session within the City of Manchester." The collective bargaining agreement provides that "[w]ork [for part-time operators] shall be on school days unless performing charter work." The claimants argue, however, that MTA school buses are used for charter work during school vacations and that "there is a penalty for the drivers for refusing to do charter work."

In its decision in the instant case, the board stated:

> Throughout the periods when the claimant[s] w[ere] not working the record reflects that they were available and "on call" during the "slack time" which existed as a result of the school vacation period. Despite the claimant[s'] availability there was no work available that week. In accordance with the holding in the *Locke* decision the claimant was required to be available during the "slack time" in order to be assured that her job would still be available to her when business returned to normal at the end of school vacation. These and other facts in the instant case outlined herein and in the record are similar to those in the *Locke* decision.

We conclude that the appellate board's characterization of the facts in this case as analogous to those in *Appeal of Locke* is clearly erroneous.

The appellate board is required to defer to the appeal tribunal's factual findings. *See* RSA 282-A:65 (1999). The appeal tribunal found that "in accordance with the [union] contract, part-time school bus drivers will be utilized to perform all school related charter work in yellow school buses." It also found that "[i]f a charter is refused there is no threat of loss of employment, however the refusing driver is placed at the bottom of the seniority list." These facts are not analogous to those in *Appeal of Locke,* where the petitioner's employer "required its employees to be on-call during [semester breaks]" and the petitioner was "fearful that if she were not available during the slow business times, her job would not be assured when business in the area returned to its normal pace during the academic year." *Appeal of Locke,* 127 N.H. at 405-06.

The collective bargaining agreement provides:

i. A list shall be made available at the beginning of each contract pick, allowing each school bus operator the opportunity to sign yes or no to performing additional school related work.

j. An operator who refuses when asked to perform additional work, shall go to the bottom of the additional work list as worked and shall not be asked again until all other school bus operators that have signed yes to the additional work list have had the opportunity to accept or refuse.

Thus, part-time operators voluntarily decide whether to take on charter work at all. There is no evidence of any penalty for signing "no" to the charter work list. Once on the list, part-time operators are offered charter work "by seniority and on a rotating basis." When an operator's name is at the top of the list and the operator is offered a charter, the operator may still refuse, but the operator's name then goes to the bottom of the charter list. We disagree with the characterization of this consequence as a penalty, however, as the operator's name also goes to bottom of the list if the operator accepts and performs the work. While the collective bargaining agreement could have implemented a different rotation system, we do not view its failure to allow an operator to remain at the top of the list until work is accepted as a penalty on par with the feared loss of employment in *Appeal of Locke.*

■ We conclude that the claimants were not expected to work when school was not in session and were not required to be "on call"

during such times. We therefore hold that the claimants are ineligible for unemployment benefits for the "established and customary" 1998 February vacation. RSA 282-A:31, II(c).

The claimants nevertheless argue that MTA is precluded, under the doctrines of res judicata and collateral estoppel, from challenging their eligibility because it did not appeal a board decision granting one of the claimants, Gwyn Furtado, unemployment benefits for the 1997 February vacation. MTA argues that to give preclusive effect to the 1997 decision "would be unfair, inequitable and contrary to the interests of judicial economy." We find it unnecessary to address MTA's policy arguments, however, because we conclude that neither res judicata nor collateral estoppel applies.

■ "Res judicata is a doctrine judicial in origin which applies to repetitious suits involving the same cause of action." *Christian Camps & Conferences v. Town of Alton*, 118 N.H. 351, 353 (1978). It is inapplicable here because the claimants' claim for benefits for the February 1998 vacation is a different cause of action than Gwyn Furtado's claim for benefits for the February 1997 vacation. *See id.* at 353-54.

■ Collateral estoppel, on the other hand, "precludes the relitigation by a party in a later action of any matter actually litigated in a prior action in which he or someone in privity with him was a party." *In re Alfred P.*, 126 N.H. 628, 629 (1985). The only issue that appears to have been actually litigated in 1997 is whether the appeal tribunal erred in determining that MTA "[met] the definition of a service organization for an educational institution pursuant to RSA 282-A:31 II(b)." We held above, however, that whether MTA is a service organization is irrelevant to the issue to be determined in this case. Thus, we conclude that MTA is not collaterally estopped by the appellate board's 1997 decision.

Finally, the claimants argue that MTA waived the issues appealed because "the questions presented for review were not raised by the MTA in the appeal below, but rather by the State of New Hampshire itself." We conclude, however, that the claimants waived this argument by failing to make more than this passing reference to it in their brief. *See State v. Hermsdorf*, 135 N.H. 360, 365 (1992).

*Reversed.*

BROCK, C.J., and BRODERICK, J., concurred.