Hillsborough-northern judicial district
No. 99-505

OLD STREET BARN, LLC

v.

TOWN OF PETERBOROUGH

December 10, 2001

*Bradley, Burnett & Kinyon, P.A.*, of Keene (*Beth R. Fernald* on the brief and orally), for the plaintiff.

*Brighton & Runyon, P.A.*, of Peterborough (*William E. Strickland Jr.* on the brief and orally), for the defendant.

*Gregory J. Wenger*, of Hampton Falls, on the brief and orally, for the intervenors, Old Street Neighborhood Group *& a.*

DUGGAN, J. The plaintiff, Old Street Barn, LLC, appeals an order of the Superior Court (*Lynn*, J.) affirming the decision of the Town of Peterborough Zoning Board of Adjustment (ZBA) denying the plaintiff's request to increase the amount of water transported from its property. We affirm.

The plaintiff owns thirty-two acres of land extending over two zoning districts in the town of Peterborough. A stone barn and two wells, which produce a plentiful supply of high quality spring water, are located on the property within the Rural District. The portion of the plaintiff's driveway that passes from the wells to the public road is located within the Family District.

In 1990 or before, the town's code enforcement officer issued a cease and desist order after the plaintiff's predecessor, Charles Howard, began pumping water from the wells into tanker trucks for transport and commercial sale. Howard appealed to the ZBA seeking either a variance that would allow the removal of water from the property for commercial sale or relief from the cease and desist order based upon his alleged common law right to pump water from his property. The ZBA denied his request for a variance, but vacated the cease and desist order based upon Howard's "common law right to pump water from his property." In vacating the cease and desist order, the ZBA found, "as proposed by the applicant, that trucking of water is permitted as an adjunct to the common law right to pump and is not prohibited by the ordinance." To ensure the proposed use did not "exceed the common law right and [impose] a greater intrusion than the uses permitted by the ordinance for this property," the water removal activity was limited by certain conditions proposed by Howard and mandated by the ZBA. Those conditions included limiting the removal of water to two 7,000-gallon-tank trucks per day.

Following this decision, certain abutters appealed to the superior court. Howard appeared, along with the town, to defend the ZBA's decision, but did not cross-appeal the limitations imposed by the ZBA. Following a hearing, the superior court upheld the ZBA decision. None of the parties appealed. Since 1990, the plaintiff and its predecessors continued the water pumping operation as permitted by the ZBA's decision.

In June 1998, the plaintiff requested the ZBA to modify its order and permit removal of four 8,200-gallon-tank trucks of water per day. Following hearings, the ZBA declined to modify its order and denied the plaintiff's request for a rehearing. The plaintiff appealed, and the superior court affirmed the ZBA's decision. *See* RSA 677:4 (Supp. 2000).

On appeal, the superior court's decision will be upheld unless it is not supported by the evidence or is legally erroneous. *Peabody v. Town of Windham*, 142 N.H. 488, 492 (1997). For its part, the superior court shall not set aside or vacate the ZBA's decision "except for errors of law, unless the court is persuaded by the balance of probabilities, on the evidence before it, that said order or decision is unreasonable." RSA 677:6 (1996). To the extent the ZBA made findings upon questions of fact properly before the court, those findings are deemed *prima facie* lawful and reasonable. *Id.*

The plaintiff first argues that the superior court erred in concluding that the ZBA had jurisdiction to consider the plaintiff's request for modification of the ZBA's prior order. The plaintiff asserts that the ZBA's authority is limited by RSA 674:33 (Supp. 2000), and in this case, where neither a variance nor special exception was sought, the ZBA lacked jurisdiction.

 RSA 674:33, I(a) provides: "The zoning board of adjustment shall have the power to ... [h]ear and decide appeals if it is alleged there is error in any order, requirement, decision, or determination made by an administrative official in the enforcement of any zoning ordinance ...." Further, "[i]n exercising its powers under paragraph I, the zoning board of adjustment may reverse or affirm, wholly or in part, or may modify the order, requirement, decision, or determination appealed from and may make such order or decision as ought to be made and, to that end, shall have all the powers of the administrative official from whom the appeal is taken." RSA 674:33, II. Finally, the zoning board of adjustment shall have the power to authorize variances, RSA 674:33, I(b), and in appropriate cases make special exceptions, RSA 674:33, IV. Because the plaintiff sought relief from a prior order of the ZBA, which involved the application of the zoning ordinance by the code enforcement officer, the ZBA had jurisdiction under RSA 674:33 to hear the plaintiff's request to modify that order. Thus, the superior court did not err in concluding the ZBA had jurisdiction over the plaintiff's modification request.

The next issue the plaintiff raises implicates the applicability of the doctrine of collateral estoppel to this case. The plaintiff argues that the ZBA and the superior court were bound by the 1990 superior court decision. Specifically, the plaintiff asserts, in 1990, the superior court ruled "that pumping and selling water is permitted in the Rural District under

the Peterborough Zoning Ordinance, and that the extraction of water for commercial sale is not prohibited or restricted in the Zoning Ordinance." The plaintiff further asserts that the superior court ruled "that driving trucks to the Property across the Family District is not a commercial use and could not be prohibited." Therefore, the plaintiff contends, in this case, the superior court "did not have the discretion to overturn the 1990 Order based on a proposed modest increase in a use which the Court previously determined was permitted by the Zoning Ordinance."

"Collateral estoppel . . . precludes the relitigation by a party in a later action of any matter actually litigated in a prior action in which he or someone in privity with him was a party." *Appeal of Manchester Transit Authority*, 146 N.H. 454, 461 (2001) (quotation omitted). Collateral estoppel thus applies to the prior findings and rulings only to the extent specific issues regarding this property in 1990 were litigated and resolved. *See id.*

In 1990, the ZBA "f[ound] that the applicant's use of the property is reasonable and permitted only with compliance with [the] conditions. Without [the] conditions and limitations upon the applicant, the proposed use could and perhaps would exceed the common law right and be a greater intrusion than the uses permitted by the ordinance for this property." The plaintiff's predecessor did not appeal this issue to the superior court. Consequently, to the extent the ZBA concluded pumping and trucking water from his property did not violate the zoning ordinance, the ZBA limited its ruling to using the property for pumping and trucking two 7,000-gallon-tank trucks of water per day. The issue of whether doubling the amount of water pumped and trucked is a permissible use under the zoning ordinance was not actually litigated in 1990, and therefore the ZBA and subsequently the superior court were not collaterally estopped from deciding the issue.

The next issue is whether the superior court erred in concluding that pumping and removing water using four 8,200-gallon-tank trucks per day for commercial sale violates the applicable zoning ordinance. Interpreting a zoning ordinance is a question of law, which we review *de novo. Mt. Valley Mall Assocs. v. Municipality of Conway*, 144 N.H. 642, 648 (2000). The ordinances at issue provide: "[T]he uses and occupancy of all land in the Town of Peterborough are hereby regulated and restricted by this chapter," TOWN OF PETERBOROUGH LAND USE REGULATIONS § 245-2 (1998), and "[n]o . . . land shall be . . . used . . . unless in conformity with all of the regulations herein specified for the district in which it is located," *id.* § 245-21. These sections make it clear that in the absence of a variance or

special exception uses of land must be expressly permitted by the ordinance. *Cf. Treisman v. Kamen*, 126 N.H. 372, 375-76 (1985).

▮ In the Rural District, where the plaintiff's wells are located, land may be used for: (1) "General purpose farm and/or forestry, agriculture, garden or nursery and the selling of products therefrom"; (2) "Public utility uses and municipal facilities"; (3) "Educational and cultural facilities"; and (4) "Any use allowed in the Family District," which includes residential and recreational uses, as well as farming and gardening. TOWN OF PETERBOROUGH LAND USE REGULATIONS §§ 245-6, 245-8 (1998). While the plaintiff's use of the property may be characterized as the "selling of products," the ordinance limits the scope of that use to products generated by the general purpose farm, forestry, agriculture, garden and nursery uses specified in the ordinance. The plain language of the ordinance simply does not contemplate using the property for a commercial venture involving pumping and removing four 8,200-gallon-tank trucks of water per day. *Cf. KSC Realty Trust v. Town of Freedom*, 146 N.H. 271 (2001) (both majority and dissent noting commercial nature of transporting comparable quantities of water). Because the proposed use is not expressly permitted by the ordinance, it is prohibited as a matter of law unless the plaintiff first obtains a special exception or variance. The superior court "conclude[d] that the ZBA could reasonably have found that the more intensive use proposed would violate the ordinance," and consequently declined to set aside the ZBA's decision. Based upon the record before us, we cannot say the superior court's decision is not supported by the evidence or legally erroneous, and therefore we must affirm.

Finally, the plaintiff argues that the ZBA's decision was unlawful because the ZBA failed to provide written reasons for the disapproval. *See* RSA 676:3 (Supp. 2000). This issue, however, is not preserved for our review, because it was not raised in the plaintiff's motion for rehearing or considered by the superior court below. *See* RSA 677:3, I (1996).

*Affirmed.*

BROCK, C.J., and BRODERICK, NADEAU and DALIANIS, JJ., concurred.