NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by e-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

———————————————

Grafton
No. 2018-0604


JOHN C. RANKIN <u>& a</u>.

v.

SOUTH STREET DOWNTOWN HOLDINGS, INC.

SOUTH STREET DOWNTOWN HOLDINGS, INC.

v.

TRUEXCULLINS AND PARTNERS ARCHITECTS <u>& a</u>.

Argued: June 4, 2019
Opinion Issued: August 6, 2019


<u>Shaheen & Gordon, P.A.</u>, of Dover, for the plaintiffs, John C. Rankin and MaryAnne Rankin, filed no brief.


<u>Devine, Millimet & Branch, Professional Association</u>, of Manchester (<u>Andrew D. Dunn</u> and <u>Tavish M. Brown</u> on the brief, and <u>Mr. Dunn</u> orally), for the defendant/third-party plaintiff, South Street Downtown Holdings, Inc.

Lewis Brisbois Bisgaard & Smith LLP, of Boston, Massachusetts (Kenneth B. Walton and Elena M. Brander on the brief, and Mr. Walton orally), for third-party defendant TruexCullins and Partners Architects.

Morrison Mahoney LLP, of Manchester (William A. Staar and Nicholas Meunier on the brief, and Mr. Staar orally), for third-party defendant Wagner Hodgson, Inc.

HICKS, J. This case is before us on an interlocutory transfer without ruling from the Superior Court (MacLeod, J.). See Sup. Ct. R. 9. The trial court transferred the following question:

> Does RSA 508:4-b ("the statute of repose") as amended in 1990 apply to and bar third party actions by a property owner defendant (in a premises liability action) for indemnity and/or contribution against architects involved in the design of the improvement to real property which the injured plaintiff alleges was dangerous and did not meet applicable building codes?

We conclude that it does.

We accept the facts as presented in the interlocutory transfer statement. See In re C.M., 163 N.H. 768, 770 (2012). We recite additional facts, for background only, as alleged in the complaint brought by John C. Rankin (Rankin) and his wife MaryAnne (collectively, the underlying plaintiffs) and in South Street Downtown Holdings, Inc.'s (South Street) third-party complaint. In March 2015, Rankin fell while leaving a business located at 70 South Main Street in Hanover (the property). The property is owned by South Street. In March 2017, the underlying plaintiffs sued South Street for negligence and loss of consortium, alleging that Rankin fell on an "inadequate and dangerous ramp or partial stair" that "did not meet applicable building codes."

South Street, in turn, filed a third-party complaint against the third-party defendants, project architect TruexCullins and Partners Architects (TruexCullins) and landscape architect Wagner Hodgson, Inc. (Wagner Hodgson), seeking indemnity and/or contribution. South Street had hired the third-party defendants to serve as design professionals for renovations to the property that took place between 2002 and 2009, and were substantially completed by January 2009. South Street alleged that both third-party defendants were involved in designing the area in which Rankin allegedly fell. On appeal, South Street concedes that its "third-party action[] was brought more than 8 years after the date of substantial completion."

2

Wagner Hodgson moved to dismiss on grounds that the claims against it are barred by the statute of repose, RSA 508:4-b (2010).  The trial court found that "a substantial basis exists for a difference of opinion as to whether the current version of [RSA 508:4-b] applies to indemnity and/or contribution claims arising out of a deficiency in the creation of an improvement to real property," and transferred the question now before us.

To answer the transferred question, we must engage in statutory interpretation.

> The interpretation of a statute is a question of law, which we review de novo.  In matters of statutory interpretation, we are the final arbiters of the legislature's intent as expressed in the words of the statute considered as a whole.  In construing its meaning, we first examine the language found in the statute, and when possible, we ascribe the plain and ordinary meanings to the words used.  We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include.  We interpret statutory provisions in the context of the overall statutory scheme.  Absent an ambiguity, we will not look beyond the language of the statute to discern legislative intent.

Bank of N.Y. Mellon v. Dowgiert, 169 N.H. 200, 204 (2016) (citations omitted).

The statute at issue, RSA 508:4-b, currently provides, in relevant part:

> Except as otherwise provided in this section, all actions to recover damages for injury to property, injury to the person, wrongful death or economic loss arising out of any deficiency in the creation of an improvement to real property, including without limitation the design, labor, materials, engineering, planning, surveying, construction, observation, supervision or inspection of that improvement, shall be brought within 8 years from the date of substantial completion of the improvement, and not thereafter.

RSA 508:4-b, I.  The statute sets forth a limited number of exceptions.  See RSA 508:4-b, III, V, VI.  None of the listed exceptions are applicable here.  No explicit exception for indemnity or contribution is contained in the current statute.  See RSA 508:4-b.

Each of the parties contends that the plain language of the statute supports its position.  South Street focuses first upon the specific list of actions subject to the statute — "all actions to recover damages for injury to property, injury to the person, wrongful death or economic loss arising out of any deficiency in the creation of an improvement to real property" — and notes that

3

actions for indemnity and contribution are not included in that list.  Id.  Citing the interpretive canon expressio unius est exclusio alterius, South Street contends that "it must be presumed that the legislature excluded all other types of actions."  See Appeal of Cover, 168 N.H. 614, 622 (2016) (interpreting the expressio unius canon to mean "[n]ormally the expression of one thing in a statute implies the exclusion of another" (quotation omitted)).  South Street also argues that to interpret RSA 508:4-b as applying to indemnity and/or contribution actions would add language to the statute in violation of the rule that "[w]e interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include."  Bank of N.Y. Mellon, 169 N.H. at 204.  Finally, South Street argues that the words "all actions" in RSA 508:4-b cannot be read to include actions for indemnity and/or contribution without violating the rule that "all of the words of a statute must be given effect and that the legislature is presumed not to have used superfluous or redundant words."  Merrill v. Great Bay Disposal Serv., 125 N.H. 540, 543 (1984).  According to South Street, "[t]o read RSA 508:4-b to apply to any action regardless of the category of damage the claim seeks to recover would render the serial list in RSA 508:4-b, I[,] superfluous."

The third-party defendants,[1] on the other hand, point to the statute's expansive language, covering "all actions to recover damages for injury to property, injury to the person, wrongful death or economic loss arising out of any deficiency in the creation of an improvement to real property."  RSA 508:4-b, I (emphases added).  They note that we have broadly interpreted the statute's "language [as] unambiguously encompass[ing] all types of claims, as long as they arise from a deficiency in the creation of an improvement to real property."  Phaneuf Funeral Home v. Little Giant Pump Co., 163 N.H. 727, 731 (2012) (emphasis added).  They conclude that RSA 508:4-b bars the claims against them because "[i]ndemnity and contribution claims linked to building-improvement-deficiency claims are 'actions' to recover 'economic loss' that 'arise out of' such improvements."

South Street challenges two of the premises underlying the third-party defendants' interpretation; namely, that the third-party action is a claim for "economic loss" and that it "arise[s] out of" a deficiency in the creation of an improvement to real property.  South Street first asserts that "'economic loss' is a term of art which has acquired a meaning at common law" and that, pursuant to RSA 21:2, that term must be construed accordingly.  See RSA 21:2 (2012) (providing rule of statutory construction that "[w]ords and phrases shall be construed according to the common and approved usage of the language;

---

[1] Because TruexCullins and Wagner Hodgson make similar arguments on appeal and seek the same outcome, we do not differentiate their individual arguments but, rather, reference all of them as arguments of the third-party defendants.  Similarly, where we address South Street's response to an argument of one third-party defendant, we treat it as responding to an argument of both.

but technical words and phrases, and such others as may have acquired a peculiar and appropriate meaning in law, shall be construed and understood according to such peculiar and appropriate meaning"). South Street contends that "[t]his Court defines an economic loss as 'that loss resulting from the failure of the product to perform to the level expected by the buyer and . . . commonly measured by the cost of repairing or replacing the product.'" (Quoting Lempke v. Dagenais, 130 N.H. 782, 792 (1988).) It also cites Kelleher v. Marvin Lumber & Cedar Co., 152 N.H. 813 (2005), for the proposition that "economic loss is characterized as damage that occurs to the inferior product itself, through deterioration or non-accidental causes . . . [and] encompass[es] both damage to the defective product itself and the diminution in value of the product because it is inferior in quality." Kelleher, 152 N.H. at 835 (citation omitted). It then argues that because its third-party action is not one to recover damages to repair or replace the allegedly defective stairs or for the diminution in their value, it is not an action to recover damages for economic loss under the statute.

South Street's reliance upon Lempke and Kelleher is misplaced. Lempke involved structural problems in a recently constructed garage that required repair, and presented the question "whether a subsequent purchaser of real property may sue the builder/contractor on the theory of implied warranty of workmanlike quality for latent defects which cause economic loss, absent privity of contract." Lempke, 130 N.H. at 783. Kelleher involved an action "seeking damages for the replacement costs of . . . defective windows, loss of value of the house in which the windows were installed and costs related to repairing water damage allegedly caused by the defective windows." Kelleher, 152 N.H. at 821. In each, we referenced, either explicitly, Kelleher, 152 N.H. at 835-36, or implicitly, Lempke, 130 N.H. at 792, the "economic loss doctrine," which "is a common law rule that emerged with the advent of products liability" but has been expanded in many jurisdictions to other tort cases, Plourde Sand & Gravel v. JGI Eastern, 154 N.H. 791, 794 (2007). It "is a judicially-created remedies principle that operates generally to preclude contracting parties from pursuing tort recovery for purely economic or commercial losses associated with the contract relationship." Id. (quotation omitted).

The narrow definition of "economic loss" that South Street quotes from Lempke was applicable to the damages sought in that case (repair to a defective garage), Lempke, 130 N.H. at 783-84, and harkens back to the products-liability origins of the economic loss doctrine itself. The definition South Street quotes from Kelleher was explicitly qualified as applying "[i]n the products liability context" and, again, related to the damages sought in that case, Kelleher, 152 N.H. at 835. Neither case defined the term "economic loss" for all purposes and in all contexts.

We have used the term in other contexts in which its meaning was clearly not related to the cost of repairing a defective product. See, e.g., State

v. Hess Corp., 161 N.H. 426, 437 (2011) (agreeing with State, in determining the extent of its parens patriae authority to recover damages to New Hampshire waters from contamination by methyl tertiary butyl ether (MBTE), "that claims for diminution in value of private property, lost business expenditures and other business and economic losses resulting from MBTE contamination properly belong to private parties" (emphasis added)); McLaughlin v. Fisher Eng'g, 150 N.H. 195, 200 (2003) (upholding trial court's decision to allow cross-examination of plaintiff's economic expert, "[w]hen [he] testified about the likely economic loss to [accident victim's] estate as a result of his early death," on the potential effect of victim's drug use on his estimated lifetime earnings (emphasis added)).

We note, moreover, that the legislature has used the term in other contexts in which it cannot be construed as meaning the cost of repairing a defective product. See, e.g., RSA 458:16-a, II(*l*)(2) (2018) (providing that in ordering property settlement between divorcing parties, court may consider fault of either party if it caused the breakdown of the marriage and "[r]esulted in substantial economic loss to the marital estate or the injured party" (emphasis added)); RSA 638:26, III (2016) (providing that person found guilty of identity fraud shall "be ordered to make restitution for economic loss sustained by a victim as a result of such violation" (emphasis added)).

Accordingly, we disagree with South Street that the term "economic loss" has "acquired a peculiar and appropriate meaning in law" such that it should be "construed and understood according to" that meaning in RSA 508:4-b. RSA 21:2; see also Cont'l W. Ins. Co. v. Superior Fire Prot., Inc., No. 18-CV-117-JL, 2019 WL 1318274, at *7 (D.N.H. Mar. 22, 2019) (concluding that "the term 'economic loss' in the construction statute of repose [RSA 508:4-b] is not a reference to the common-law term or doctrine"). Our task becomes, then, to apply the "plain and ordinary" meaning of that term. Bank of N.Y. Mellon, 169 N.H. at 204; see RSA 21:2.

We agree with the third-party defendants that the plain and ordinary meaning of "economic loss" is a loss that is "financial[,] fiscal[,] [or] monetary." (Quotations omitted.) See, e.g., 1 Shorter Oxford English Dictionary 794 (6th ed. 2007) (defining "economic," in relevant part, as "relating to monetary considerations, financial"); see also Roget's 21st Century Thesaurus 289 (1992) (including, as synonyms for "economic," "fiscal," "monetary," and "pecuniary"). This meaning accords with the term's usage in the above-cited cases and statutes.

Having so defined "economic loss," we conclude that South Street's third-party action for indemnity and/or contribution falls within the meaning of that term. As the United States District Court for the District of New Hampshire has noted: "Indemnification is always sought as compensation for economic losses, which are the damages paid to a third person, whether the underlying

6

loss is economic or the result of physical injury or damage to property." Johnson v. Capital Offset Co., Inc., No. 11-CV-459-JD, 2013 WL 5406619, at *9 (D.N.H. Sept. 25, 2013).

South Street next contends that its indemnity claims do not fall within the plain language of RSA 508:4-b because they are not "actions to recover damages . . . arising out of any deficiency in the creation of an improvement to real property," RSA 508:4-b, I, but, rather, are "actions to recover damages for breach of the express and/or implied duty to indemnify aris[ing] from contract." South Street principally relies upon two cases from other jurisdictions: Ray & Sons Masonry v. United States Fidelity & Guaranty, 114 S.W.3d 189 (Ark. 2003), and South Dearborn School Building Corp. v. Duerstock, 612 N.E.2d 203 (Ind. Ct. App. 1993). We find these cases distinguishable.

Each case involved an express contractual duty to indemnify. See Ray & Sons, 114 S.W.3d at 196; South Dearborn, 612 N.E.2d at 205. Each also involved a statute of repose barring certain actions to recover damages for or caused by construction deficiencies. See Ray & Sons, 114 S.W.3d at 200 (applying statute of repose covering any "action in contract . . . to recover damages caused by any deficiency" in construction (quotation omitted) (emphasis added)); South Dearborn, 612 N.E.2d at 205 (applying statute of repose covering, in relevant part, any "action to recover damages whether based on contract, tort, nuisance, or otherwise, for . . . any deficiency" in construction (quotation omitted) (emphases added)). Finally, each concluded that the indemnity action at issue did not fall within the applicable statutory language. Thus, in South Dearborn, the court reasoned that if the plaintiff were to recover from the defendant, "the damages recovered would not be 'for' a deficiency or any injury to property or person arising out of a deficiency. Instead, any damages [the plaintiff] would be entitled to recover would be grounded solely in rights granted pursuant to the contract." South Dearborn, 612 N.E.2d at 209. Similarly, the court in Ray & Sons held:

> [The applicable statute] provides a statute of repose on actions to recover damages caused by a deficiency in the construction of an improvement to real property. At issue before us is an action alleging breach of the indemnity provision in the construction contract, or in other words, an alleged breach of the contractual obligation to indemnify. This case is not one based on damages from alleged defective construction. Therefore, the statute of repose is not applicable to this case.

Ray & Sons, 114 S.W.3d at 202.

The statutory language applicable here, however, is broader than the language construed in South Dearborn and Ray & Sons. RSA 508:4-b applies,

7

in relevant part, to "all actions to recover damages for . . . <u>economic loss arising out of</u> any deficiency in the creation of an improvement to real property," not just to "all actions to recover damages for . . . any deficiency in the creation of an improvement to real property."  RSA 508:4-b, I (emphasis added).  As previously noted, indemnity and contribution actions are actions to recover for economic loss.  See <u>Johnson</u>, 2013 WL 5406619, at *9.  We therefore conclude that inclusion of the phrase "economic loss arising out of any deficiency" broadens New Hampshire's construction statute of repose to include indirect actions such as those for indemnity and/or contribution.  To construe RSA 508:4-b in accordance with the reasoning applied in <u>South Dearborn</u> and <u>Ray & Sons</u> would require us to ignore a portion of the statute's language, which we decline to do.  See <u>State v. Bobola</u>, 168 N.H. 771, 775 (2016) (declining to ignore language in provision of Criminal Code "as we must give effect to all words in a statute" (quotation and brackets omitted)); <u>see also</u> <u>Merrill</u>, 125 N.H. at 543 (stating rule of statutory construction that "all of the words of a statute must be given effect and that the legislature is presumed not to have used superfluous or redundant words").

In addition, our construction of RSA 508:4-b comports with the statute's purpose, which is to relieve potential defendants in the building trades "from infinite liability perpetuated by the discovery rule."  <u>Big League Entm't. v. Brox Indus.</u>, 149 N.H. 480, 484 (2003).  In amending the statute in 1990, the legislature stated:

> The general court finds that, under current law, builders, designers, architects and others in the building trade are subject to an almost infinite period of liability.  This period of liability, based on the discovery rule, particularly affects the building industry and will eventually have very serious adverse effects on the construction of improvements to real estate in New Hampshire.  Therefore, it is in the public interest to set a point in time after which no action may be brought for errors and omissions in the planning, design and construction of improvements to real estate.  This act is determined to be in the public interest and to promote and balance the interests of prospective litigants in cases involving planning, design and construction of improvements to real property.

Laws 1990, 164:1.

We agree with the third-party defendants that to read the statute as not applying to actions for indemnity and contribution would contravene the statute's purpose.  As courts in other jurisdictions have observed in similar cases, allowing indemnity and/or contribution actions against those in the building trades, notwithstanding the bar on a direct action, would allow an end

8

run around the statute of repose. As the Court of Appeals of Georgia explained:

> These decisions all defer to the legislature's intent, in enacting statutes of ultimate repose, to establish a reasonable outside time limit beyond which architects, engineers, and contractors are insulated from suit based upon their work in constructing improvements to real estate. Without such protection, such persons would be exposed to liability for many years after losing control over the improvements and their use and maintenance. Allowing a claim for indemnification under these circumstances would indirectly thwart the intention of the legislature.

Gwinnett Place Assoc. v. Pharr Engineering, 449 S.E.2d 889, 891 (Ga. Ct. App. 1994) (citations omitted); see also Facility Constr. Mgmt. Inc. v. Ahrens Concrete Floors, Inc., No. 1:08-CV-01600-JOF, 2010 WL 1265184, at *8 (N.D. Ga. Mar. 24, 2010) (noting that while plaintiff's claims "may be couched in terms of indemnification and defense, . . . [p]laintiff is attempting to recover for losses caused by deficient construction or injury to property caused by deficient construction," and "cannot be permitted to do indirectly what the law does not permit it to do directly").

The underlying plaintiffs' action against South Street seeks damages arising from South Street's alleged failure "to provide a reasonably safe ramp or stair in the area between its doors and the sidewalk." We agree with the third-party defendants that should the underlying plaintiffs prevail in their claims against South Street, the payment of damages by South Street to the underlying plaintiffs "would be an 'economic loss' that 'arises from' the alleged deficiency in the subject stairs and ramp." Moreover, we disagree with South Street's contention that allowing its indemnity claim to survive the statute of repose would not frustrate the purpose of that statute because "indemnity damage claims . . . are not dependent upon proof of professional negligence." The underlying plaintiffs' action against South Street alleges a number of defects in the ramp or stair on which Rankin allegedly fell, including that it was "too steep" and was "not designed, built, or maintained with appropriate handrails," and, therefore, did not meet applicable building codes. These alleged defects constitute "deficienc[ies] in the creation of an improvement to real property" under RSA 508:4-b, I. Even if South Street does not have to prove professional negligence directly to maintain its indemnity claims, those claims seek to recover damages for such alleged professional negligence indirectly by recovering any damages paid to the underlying plaintiffs on their claims alleging deficient design and/or construction. We conclude that such indirect recovery would frustrate the purpose of RSA 508:4-b. Accordingly, we reject South Street's argument that its third-party claims do not fall within RSA 508:4-b's "arising out of any deficiency" language. RSA 508:4-b, I.

South Street next invokes the doctrine that "statutes in derogation of the common law are to be interpreted strictly" and that "we will not interpret a statute to abrogate the common law unless the statute clearly expresses that intent." Sweeney v. Ragged Mt. Ski Area, 151 N.H. 239, 241 (2004) (quotation omitted), superseded by statute on other grounds as stated in Martin v. Pat's Peak, 158 N.H. 735, 737 (2009). South Street notes that rights of indemnity and contribution are common law rights. See id. (stating that "immunity provisions barring the common law right to recover are to be strictly construed"). It then argues that "[t]he Legislature did not provide a clear expression that it intended RSA 508:4-b to bar the common law right to bring indemnity and/or contribution damage claims. To the contrary, however, because indemnity and/or contribution claims fit within the plain language of RSA 508:4-b, we conclude that the legislature has clearly expressed the intent to bar such claims.

South Street nevertheless contends that the legislature's intent to exclude indemnity and contribution claims from the statute of repose is evidenced in the 1990 amendment to RSA 508:4-b. Prior to June 26, 1990, the statute provided:

> No action to recover damages for injury to property, real or personal, or for an injury to the person, or for bodily injury or wrongful death, arising out of any deficiency in the design, planning, supervision or observation of construction, or construction of an improvement to real property, nor any action for contribution or indemnity for damages sustained on account of such injury, may be brought against any person performing or furnishing the design, planning, supervision of construction or construction of such improvement to real property more than six years after the performance or furnishing of such services and construction. This limitation shall not apply to any person in actual possession and control as owner, tenant or otherwise, of the improvement at the time the defective and unsafe condition of such improvement constitutes the proximate cause of the injury for which it is proposed to bring an action.

RSA 508:4-b (1968) (amended 1990) (emphasis added); see Laws 1990, 164:4 (providing effective date of amendment).

South Street argues that because the pre-1990 version of the statute explicitly mentioned actions for contribution and indemnity, and the current version omits such reference, the legislature must have intended to exclude such claims from the statute of repose. The third-party defendants, on the other hand, contend that because the current version of RSA 508:4-b is unambiguous, it would be improper to consider the prior version of the statute in construing the statute currently in force. See Bank of N.Y. Mellon, 169 N.H.

10

at 204 ("Absent an ambiguity, we will not look beyond the language of the statute to discern legislative intent.").

"[T]he legislature's choice of language is deemed to be meaningful," and "we generally assume that whenever the legislature enacts a provision, it has in mind previous statutes relating to the same subject matter." State Employees Assoc. of N.H. v. N.H. Div. of Personnel, 158 N.H. 338, 345 (2009) (quotations and brackets omitted). Accordingly, we have recognized that "[o]rdinarily, any material change in the language of the original act is presumed to indicate a change in legal rights." Appeal of Manchester Transit Auth., 146 N.H. 454, 458 (2001) (quotation and ellipsis omitted). While in some cases we have explicitly found the statutory language under consideration to be ambiguous before applying this rule, see, e.g., id., we have not uniformly done so, see, e.g., Conrad v. Hazen, 140 N.H. 249, 251-52 (1995).

We decline, in the instant case, to determine whether a finding of ambiguity is required, because we conclude that South Street's argument is unavailing even if the rule were to be applied. We recognize that the 1990 amendment to RSA 508:4-b constituted a material change in the language of the prior act. Even presuming, however, that the change indicates the legislature's intent to alter legal rights, it does not necessarily follow that the intended alteration was the removal of indemnity and contribution actions from the statute's bar. Among other textual changes, the amendment deleted the phrase "nor any action for contribution or indemnity for damages sustained on account of such injury," RSA 508:4-b (1968), and added the term "economic loss" to the phrase "arising out of any deficiency in the creation of an improvement to real property," RSA 508:4-b, I. We agree with the third-party defendants that the new statutory language is broader than the previously-used phrase. Accordingly, we cannot conclude that the legislature intended to write indemnity and contribution actions out of the statute when it added language that covers those actions and more. Cf. Cont'l W. Ins. Co., 2019 WL 1318274, at *6 (concluding that while the 1990 amendment to RSA 508:4-b "does not explicitly address indemnification and contribution claims, it contains additional new language that unambiguously encompasses those claims").

South Street next argues that "[a]bsent clear legislative intent indicating otherwise, RSA 508:4-b should not be extended in contravention of . . . the State's general policy of holding negligent parties accountable." Because we find clear legislative intent in the plain language of RSA 508:4-b, we reject this argument.

South Street also argues that if we construe RSA 508:4-b "to bar South Street's indemnity and/or contribution damage claim . . . it would impose upon South Street a duty to assume full responsibility for [the third-party defendants'] negligence, thereby granting [them] a protection which, if . . .

11

sought via contract, would be prohibited as against public policy pursuant to RSA 338-A:1." We disagree. RSA 338-A:1 provides:

> Any agreement or provision whereby an architect, engineer, surveyor or his agents or employees is sought to be held harmless or indemnified for damages and claims arising out of circumstances giving rise to legal liability by reason of negligence on the part of any said persons shall be against public policy, void and wholly unenforceable.

RSA 338-A:1 (2009). Thus, RSA 338-A:1 prohibits architects, among other professionals, from contractually absolving themselves completely from liability for professional negligence by contract. RSA 508:4-b, by contrast, does not provide absolute immunity from professional negligence but, rather, limits the time in which such claims can be brought. Architects remain liable for their professional negligence for 8 years, or longer if expressly warranted or guaranteed in writing, after substantial completion of the improvements on which they work. See RSA 508:4-b, III.

Finally, South Street contends, for several reasons, that "[e]xcepting indemnity and contribution damage claims from the statute[']s bar would impose very few burdens on the design profession." It further argues that "[t]here is no public policy reason why design professionals should be afforded liability protection against long tail claims which is not available to other professionals" such as doctors and lawyers. These arguments are made in the wrong forum, however, as "[m]atters of public policy are reserved for the legislature." In the Matter of Ross & Ross, 169 N.H. 299, 303 (2016).

For all of the foregoing reasons, we answer the transferred question in the affirmative.

Remanded.

LYNN, C.J., and BASSETT, HANTZ MARCONI, and DONOVAN, JJ., concurred.